IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NEIL GILMOUR III, TRUSTEE FOR | § | |
| THE GRANTOR TRUSTS OF VICTORY | § | |
| PARENT COMPANY, LLC;  VICTORY | § | SA-17-CV-00510-FB |
| MEDICAL CENTER CRAIG RANCH, | § | |
| LP,  VICTORY MEDICAL CENTER | § | |
| LANDMARK, LP,  VICTORY MEDICAL | § | |
| CENTER MID-CITIES, LP,  VICTORY | § | |
| MEDICAL CENTER PLANO, LP, | § | |
| VICTORY MEDICAL CENTER | § | |
| SOUTHCROSS, LP,  VICTORY | § | |
| SURGICAL HOSPITAL EAST | § | |
| HOUSTON, LP,  VICTORY MEDICAL | § | |
| CENTER BEAUMONT, LP, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | |
| | § | |
| AETNA HEALTH, INC.,  AETNA | § | |
| HEALTH INSURANCE COMPANY, | § | |
| AETNA LIFE INSURANCE COMPANY, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendants' Motion to Dismiss Plaintiffs'

Complaint and Brief in Support [#5], Victory's Response to Defendant's Motion to Dismiss

[#14], and Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint [#15].  All

pretrial matters in this case have been referred to the undersigned for disposition pursuant to

Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for

1

the Western District of Texas [#18].  In reviewing the motion to dismiss, the undersigned has also reviewed Defendant's Notice of New Authority [#21] and Victory's Response to Defendants' Notice of New Authority [#22].  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that Defendants' motion be granted in part and denied in part.

## I.  Procedural Background

Plaintiff Neil Gilmour, III filed this action in his capacity as Trustee for the Grantor Trusts of seven former orthopedic hospitals and their parent company—Victory Parent Company, LLC; Victory Medical Center Beaumont, LP; Victory Medical Center Craig Ranch, LP; Victory Medical Center Landmark, LP; Victory Medical Center Mid-Cities, LP; Victory Medical Center Plano, LP; Victory Medical Center Southcross, LP; and Victory Surgical Hospital East Houston, LP (collectively "Victory")—against Defendants Aetna Health, Inc., Aetna Health Insurance Company, and Aetna Life Insurance Company (collectively "Aetna"). (Compl. [#1] at 1.)  According to Victory's Complaint, Victory's medical centers and hospitals provided medical procedures, including high-cost orthopedic surgeries, to thousands of Aetna's plan members.  (*Id.* at ¶ 1.)  The Complaint alleges a number of claims under various provisions of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, the Texas Insurance Code, and Texas common law.  (*Id.* at ¶¶ 64–103.)

The basic thrust of Victory's Complaint is that Aetna failed to pay or underpaid certain out-of-network claims for covered services that Victory provided to Aetna plan members in operating its hospitals and other medical facilities throughout Texas.  (*Id.* at ¶ 1.)  Victory was not a participating provider in Aetna's network at the time period at issue, and is therefore considered an out-of-network provider for purposes of this litigation.  (*Id.*)  Victory alleges that

Aetna delayed processing, then incorrectly denied or underpaid many of Victory's claims, and accused Victory of engaging in "highly suspicious billing patterns" without any substantiating evidence. (*Id.*) As a result of this accusation, Aetna allegedly placed a flag on every single one of Victory's tax ID numbers, which resulted in Victory's claims being handled by Aetna's Special Investigative Unit rather than its ordinary claims department. (*Id.*) This Special Investigative Unit allegedly failed to adjudicate Victory's claims within the statutory time frame or denied the claims altogether, failing to pay the rate provided in the patient's health benefit plan or the rates promised to Victory in verifying benefits pre-surgery. (*Id.*) Victory also alleges that Aetna intentionally withheld the plan documents and plan language that formed the basis for payment of each of Victory's claims in an attempt to mislead Victory about the level of benefits covered. (*Id.* at ¶ 4.)

Victory alleges that there are two types of plans at issue in this case: plans that Victory funded but Aetna administered (self-funded plans) and plans that Aetna both funded and insured (fully-funded plans). (*Id.* at ¶ 26.) Aetna alleges that Victory acts as an ERISA fiduciary with respect to the fully-funded plans it insures, as well as those self-funded plans which over which it has discretionary authority or control. (*Id.*) Victory alleges that some of the plans at issue in this suit are not governed by ERISA. (*Id.* at ¶ 92.)

Altogether, Victory claims that Aetna underpaid 2,943 medically-appropriate claims and denied 45 medically-appropriate procedures for which Victory billed approximately $1.6 million. (*Id.* at ¶ 2.) Victory contends all of these actions were taken by Aetna with the express intent to force Victory into an in-network contract with Aetna or force Victory out of business. (*Id.* at ¶ 5.) Victory ultimately filed for bankruptcy in June or July 2015 due to cash-flow issues it alleges

resulted from Aetna's actions.  (*Id.* at ¶¶ 5, 54.)  The last patient to receive medical services from a Victory hospital was in January 2016.  (*Id.* at ¶ 54.)

Victory asserts seven separate counts against Aetna:  (Count 1) failure to comply with applicable plans in violation of ERISA; (Count 2) breach of fiduciary duties under ERISA; (Count 3) failure to provide full and fair review under ERISA; (Count 4) violations of claims procedures under ERISA; (Count 5) violations of the Texas Insurance Code; (Count 6) breach of contract; and (Count 7) promissory estoppel and negligent misrepresentation.  For all the claims at issue in this lawsuit, Victory alleges that the patient irrevocably assigned to the Victory facilities the right for Victory to step into the shoes of the patients and both be paid by and seek payment from Aetna for the services Victory rendered, as well as the right to receive all relevant plan documents as a beneficiary of the applicable plans.  (*Id.* at ¶ 58.)

By its claims, Victory seeks as damages the amounts it should have been paid for those surgeries under either ERISA—for those patients whose plans are governed by ERISA—or under Texas common law for breach of contract—for those patients whose benefit plans are not. (*Id.*)  For those instances in which Aetna misrepresented the terms of a patient's plan during the verification process, Victory seeks to recover under Texas law the payment level that Aetna promised to pay.  (*Id.* at ¶ 3.)  For those instances in which Aetna actively misled Victory about the level of benefits available, Victory seeks exemplary damages.  (*Id.* at ¶ 4.)

Aetna filed its motion to dismiss on September 8, 2017, arguing that each of these causes of action must be dismissed under Rule 12(b)(1) for lack of standing and/or under Rule 12(b)(6) for failure to state a claim.

## II.  Analysis

Aetna moves this Court to dismiss all of Victory's claims on the basis that they are either barred for lack of standing or fail to state a claim upon which relief can be granted.  The Court should deny Aetna's 12(b)(1) motion because Victory has standing.  It should only grant Aetna's 12(b)(6) motion with regard to Victory's claims under ERISA Section 502(a)(3) (Counts 2, 3, and 4) and Victory's claim for statutory penalties under ERISA insofar as Victory relies on the *de facto* administrator theory.  Victory has met its pleading burden with regard to its other claims, and Aetna has failed to satisfy its burden to demonstrate that these claims fail as a matter of law at this preliminary stage of the proceedings.

**A.     Aetna's motion to dismiss for lack of jurisdiction should be denied.**

In the Fifth Circuit, there are two avenues for a defendant to challenge standing in regard to subject matter jurisdiction—facial and factual attacks.  *Lewis v. Knutson*, 699 F.2d 230, 237 (5th Cir. 1983) (citing *Williamson v. Tucker*, 645 F.2d 404, 412–14 (5th Cir. 1981)).  If a defendant files an unsupported Rule 12(b)(1) motion, the challenge is a facial attack, and the trial court is only required to look at the sufficiency of the allegations in the complaint and assume them as true.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  If the allegations are sufficient to allege jurisdiction, the court must deny the motion.  *Id.*  If the defendant provides affidavits, testimony, or other evidence challenging the court's jurisdiction with its 12(b)(1) motion, it is a factual attack, and the plaintiff is required to submit facts in support of jurisdiction.  *Id.*  In a factual attack, the plaintiff has the burden of proving by a preponderance of the credible evidence that the trial court has subject matter jurisdiction over the claims.  *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496–97 (5th Cir. 2007) (en banc) ("Standing to sue must be proven, not merely asserted").

5

i.     Victory has derivative standing to pursue ERISA claims on behalf of plan participants and beneficiaries.

Victory asserts its ERISA claims against Aetna as the assignee of certain rights held by Aetna plan members.  (Compl. [#1] at ¶ 26.)  Victory alleges that Aetna plan members assigned these rights and benefits to Victory when they received services at Victory facilities, and that these assignments confer standing on Victory to bring the ERISA claims at issue in this lawsuit.  (*Id.* at ¶¶ 26, 31.)  Victory's Complaint states that for each claim that Victory brings in this action, it has an assignment of benefits and rights from the patient, who in each case is an insured under an Aetna-administered benefit plan.  (*Id.* at ¶¶ 31, 58.)

Aetna argues that these assignments do not confer standing on Victory to pursue its ERISA claims for breach of fiduciary duty or claims for alleged procedural violations or statutory penalties under 29 U.S.C. § 1132(c)(1) (Counts 2, 3, and 4).  By these counts, Victory alleges that Aetna breached its fiduciary duties as plan and claims administrator by underpaying claims for covered services; failing to provide a full and fair review of claims; and failing to make necessary statutory disclosures so as to maximize benefits to Aetna rather than making determinations based on the actual terms of the plan.  (*Id.* at ¶¶ 70–81.)  Victory also seeks statutory penalties against Aetna for its failure to comply with ERISA's requirements.  (*Id.* at ¶¶ 82–86.)  Aetna seeks dismissal of these claims for lack of standing under ERISA.  Having considered the arguments of the parties, the undersigned finds that Victory has derivative standing to bring its claims for breach of fiduciary duty, ERISA procedural violations, and statutory penalties as alleged in Counts 2, 3, and 4 of its Complaint.

ERISA authorizes claims for breach of fiduciary duty under both Sections 502(a)(2) and 502(a)(3).  29 U.S.C. § 1132(a)(2), (3).  Claims under Section 502(a)(2) must be brought against the plan itself.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) (holding that

Section 502(a)(2) is "primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary").  Victory does not present a claim under Section 502(a)(2).  Rather, it asserts a right to relief for an alleged breach of fiduciary duty under Section 502(a)(3).  (Compl. [#1] at ¶¶ 70–77.)

The list of parties permitted to bring an action under Section 502(a)(3) is limited to participants, beneficiaries, or fiduciaries of plans.  29 U.S.C. § 1132(a)(3).  A valid assignment of rights, however, gives rise to derivative standing to individuals and entities beyond those enumerated by statute.  *See Tex. Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 214–15 (5th Cir. 1997); *see also Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 333–334 (5th Cir. 2005) ("It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim.").  The Fifth Circuit has expressly held that assignees of breach of fiduciary duty claims may assert derivative standing under ERISA as to both welfare and pension plans.  *Id.*; *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012)).  For a third-party to obtain standing to assert an ERISA claim for the breach of a fiduciary duty under Section 502(a)(3), however, the claim must be expressly assigned to that party.  *See Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n*, 105 F.3d at 218 ("[O]nly an express and knowing assignment of an ERISA fiduciary breach claim is valid.").

Victory attaches to its response to Aetna's motion to dismiss two examples of the assignments executed by Aetna plan members.  (*See* Assignments [#14-1] at 2–3.)  This Court is

permitted to consider documents outside of a complaint in the limited circumstance where the documents are both referred to in the complaint and are central to the claims at issue.  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).   Because Victory both refers to the assignments in its Complaint and these assignments are central to the predicate question of whether Victory even has standing to bring its claims, the undersigned considers the assignments in ruling on Aetna's motion to dismiss.  These assignments state that the assignor

> does hereby sell, transfer, convey, grant and irrevocably and forever assign to [Victory] all known and unknown, past, present, and future rights, title and interest in all claims, *causes of action* (i.e., pursuant to common law, statute, or in equity and whether based upon tort, breach of contract, *breach of fiduciary duty*, or otherwise), insurance benefits, health care benefits and all other legal rights or recovery from/against . . . (ii) any and all health plans pursuant to which Assignor and/or Patient are entitled to receive health benefits an/or money to pay for medical care, hospital care, medical devices or treatment . . . .

(Assignments [#14-1] at 2–3 (emphasis added).)   These assignments expressly assigned to Victory any claim for breach of fiduciary duty held by the Aetna plan member executing the assignment.  Accordingly, the assignment is valid, and Victory has derivative standing to assert a claim for breach of fiduciary duty under ERISA.  *See Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n*, 105 F.3d at 218.

It is less well settled, however, whether Victory has standing to assert its claim for procedural violations and statutory penalties under 29 U.S.C. § 1132(c)(1).  Aetna argues that an assignment of this category of claim is impermissible, and even if it were permissible, the assignments are insufficient as to these claims because the assignments do not specifically reference Section 502(c), the right to request plan documents, assert procedural violations based on the failure of Aetna to respond, or seek statutory penalties under this section.  (Def.'s Reply [#15] at 4–5.)  The undersigned disagrees.

Despite the lack of explicit guidance from any Fifth Circuit decision regarding the availability of derivative standing for claims arising under Section 502(c), the undersigned is persuaded by the case law finding that plan participants and beneficiaries can indeed assign these rights, so long as the assignment is sufficiently broad so as to cover the claims. *See, e.g.*, *Total Sleep Diagnostics, Inc. v. United Healthcare Ins. Co.*, No. CIV A 06-4153, 2009 WL 152537, at *2 (E.D. La. Jan. 21, 2009), *reconsideration denied in part by Total Sleep Diagnostics, Inc. v. United Healthcare Ins. Co.*, No. CIV.A. 06-4153, 2009 WL 928646, at *4 (E.D. La. Mar. 31, 2009) (holding that an assignee may seek penalties for failure to produce plan documents when specifically assigned such right). ERISA contains no anti-assignment provision with regard to health care benefits of ERISA-governed medical plans, and the same references to "participant" and "beneficiary" appear in both Section 502(a)—which the Fifth Circuit has held is subject to assignment—and Section 502(c). *See Hermann Hosp.*, 845 F.2d at 1289 (holding that derivative actions under Section 502(a) are allowable for health care benefits).

Both parties in this case agree that "the mere fact that a participant or beneficiary assigns payment for unpaid charges directly to the provider . . . does not constitute an assignment of every right or cause of action the participant or beneficiary may have under ERISA." *Total Sleep Diagnostics, Inc.*, 2009 WL 152537, at *3. To be valid, the assignment must expressly include the right to sue and pursue claims that the insured would have against the insurance company. *Id.* at *4 ("This assignment includes the assignment of the right to sue the undersigned's medical insurance company in the undersigned's/insured's name and assert all claims that the undersigned/insured will have against the insurance company resulting from, or in any way pertaining to, the [sic] medial insurance coverage that the undersigned is alleged to have had with his or her insurance company . . . ."). The assignment here does precisely that, as it

assigns not only the right to pursue payment for unpaid benefits to Victory but also "all claims, causes of action, . . . and all other legal rights or recovery from/against . . .  any and all health plans."  Additionally, the assignment specifies that the causes of action include actions arising under common law or by statute.  The assignments at issue in this case are therefore sufficiently broad to confer Victory with derivative standing to pursue statutory penalties under 29 U.S.C. § 1132(c).

> ii.     The Victory Debtors have standing to pursue claims under ERISA and state law based on a reservation of these claims in the Chapter 11 proceedings.

Aetna also asserts that Victory lacks standing under bankruptcy law to bring its claims due to the voluntary Chapter 11 bankruptcy proceedings filed by Victory Parent Company, LLC ("Victory Parent") and five Victory hospitals (collectively "Victory Debtors").  Aetna claims that Victory Parent lacks standing under bankruptcy law to assert its claims under the Texas Insurance Code (Count 5), its claim of promissory estoppel (Count 7), and its claim for exemplary damages.  Aetna contends the Victory hospitals lack standing to assert these claims, as well as Counts 2, 3, and 4 under ERISA.  The question before the Court is whether the Victory Debtors, as reorganized debtors, have standing to pursue these claims after the confirmation of a plan of reorganization in bankruptcy court.  The Court finds that the Victory Debtors have such standing.

Victory's Complaint alleges that Victory Parent and certain Victory hospitals filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015.  (Compl. [#1] at ¶ 7–11, 13.)  The First Amended Plan of Reorganization was confirmed on March 28, 2016 in Case No. 15-42373 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.  (*Id.* at ¶ 14.)  Aetna attaches to its motion to dismiss a copy of the First Amended Plan of Reorganization [#5-2].

In some cases the Bankruptcy Code allows a reorganized debtor to bring a post-confirmation action on a "claim or interest belonging to the debtor or to the estate." *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008) (citing 11 U.S.C. § 1123(b)(3)). A debtor may preserve its standing to bring such a claim (e.g., for fraud or breach of fiduciary duty), but only if the plan of reorganization expressly provides for the claim's "retention and enforcement by the debtor." *Id.* (citing 11 U.S.C. § 1123(b)(3)(B)). Such reservation must be "specific and unequivocal" to be valid, such that a debtor's creditors are on notice of any claim the debtor wishes to pursue after confirmation. *Id.* (internal quotation and citation omitted). With such notice of their potential liabilities, creditors are able to make an informed decision as to whether they want to vote for or against a plan. *Id.* It is well settled that a generic blanket reservation of "any and all claims" is not "specific and unequivocal" and therefore insufficient to give notice to creditors and to preserve the right to pursue claims of the estate by a reorganized debtor. *In re Texas Wyoming Drilling, Inc.*, 422 B.R. 612, 625 (Bankr. N.D. Tex. 2010) (citing *United Operating*, 540 F.3d at 355). "After confirmation of a plan, the ability of the [debtor] to enforce a claim once held by the estate is limited to that which has been retained in the plan." *United Operating*, 540 F.3d at 355 (internal citations omitted).

The First Amended Plan of Reorganization here ("the Plan") reserves the "[c]ollection of accounts receivable and any and all related claims cognizable under applicable law" against Aetna and each of its affiliates. (Ex. 1 to Plan of Reorganization [#5-2] at 45.) Aetna argues this reservation is insufficient to reserve any claims under Fifth Circuit authority. According to Aetna, the only specific reference in the Plan to any causes of action against Aetna is contained in section XI of the First Amended Disclosure Statement, which is also attached to Aetna's motion [#5-3]. The Disclosure Statement references a separate petition filed on February 25,

2014 by Victory Parent against Aetna in Harris County, Texas in state court, prior to the Chapter 11 proceeding, asserting claims of negligent misrepresentation and certain ERISA claims. (Disclosure Statement [#5-3] at 47–48.)  Aetna argues only these pre-petition claims could have been preserved under the Plan.

Aetna neglects to mention that, in addition to specifically reserving the "collection of accounts receivable and any and all related claims cognizable under applicable law" against Aetna, the Plan also reserves "[a]ll claims and litigation mentioned, described, or discussed in [Section XI of the Disclosure Statement]." (Ex. 1 to Plan of Reorganization [#5-2] at 45.) Section XI is entitled "Pending and Potential Litigation" and is not limited to the reservation of litigation already in process at the time of plan confirmation; rather, the Disclosure Statement expressly reserves the right to future suit against insurance companies such as Aetna.  (*Id.*) Section XI.F of the Disclosure Statement is entitled "Potential Non-Chapter 5 Litigation that Victory Debtors May Pursue" and states the following:

> [T]he Debtors reserve all rights to sue all insurance companies, former patients, any third-party payor, or any other person or entity who is liable—under any contract, agreement, regulation, procedure, statute, or any other applicable law, including without limitation ERISA—for accounts receivables or any other indebtedness owed whatsoever to one or more Debtor as a result of the provision of healthcare provided by one or more Debtor.

(Disclosure Statement [#5-3] at § XI.F, at 53.)  The Fifth Circuit has expressly held that a court may consider the disclosure statement in addition to the plan itself to determine whether a post-confirmation debtor has standing to pursue a specific claim.  *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir. 2011).

Having considered the language in both the Plan and the Disclosure Statement, the undersigned finds it to be sufficiently specific and unequivocal so as to put Aetna on notice that

the Victory Debtors anticipated pursuing claims against Aetna after confirmation. *See In re Crescent Res., LLC*, 463 B.R. 423, 437 (Bankr. W.D. Tex. 2011) (citing *In re Texas Wyoming Drilling, Inc.*, 422 B.R. at 626). As the lower courts in this Circuit have recognized, there is no Fifth Circuit opinion requiring a plan to identify specific individuals or entities as prospective defendants in order to preserve the claims, and a categorical reservation of a specific type of claim is sufficient to preserve standing. *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 834 (W.D. Tex. 2017). *See also United Operating*, 540 F.3d at 355 (citing *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324, 337–38 (Bankr. D. Conn. 2005) (language generally reserving debtor's right to pursue "preference claims" without specifically identifying alleged preferential transfers or recipients thereof was sufficient to preserve debtor's standing)).

Here, the Plan and the Disclosure Statement do not contain a mere generic reservation of all claims. Rather, the Plan and Disclosure Statement, when read in conjunction with one another as directed by the Plan, identify both the categories of causes of action and the potential Defendants in future litigation reserved under the Plan, identifying Aetna by name and insurance companies generally. The categories of identified claims include any claims for the "collection of accounts receivable" and "any and all related claims cognizable under applicable law" against Aetna specifically, as well as all any claim against insurance companies pertaining to accounts receivable or other indebtedness arising "under any contract, agreement, regulation, procedure, statute, or any other applicable law, including without limitation ERISA." (Ex. 1 to Plan of Reorganization [#5-2] at 45; Disclosure Statement [#5-3] at § XI.F, at 53.)

Aetna attempts to limit the reservation of claims to "accounts receivables," arguing that the Plan and Disclosure Statement do not contain any reference to claims "related to" such

accounts, and thus the Victory Debtors only have standing to pursue claims to recover unpaid benefits, i.e., claims of breach of contract and under Section 502(a) of ERISA.  This argument misrepresents the language of the Plan, which expressly reserves both "accounts receivables" and "any and all *related* claims" against Aetna and its affiliates.  (Ex. 1 to Plan of Reorganization [#5-2] at 45.)   Additionally, the Plan reserves "all claims and litigation" described in the Disclosure Statement, which in turn reserves "all rights to sue all insurance companies . . . for accounts receivables or any other indebtedness . . .  as a result of the provision of healthcare," naming specifically claims arising "under any contract, agreement, regulation, procedure, statute, or any other applicable law, including without limitation ERISA."   (Ex. 1 to Plan of Reorganization [#5-2] at 45; Disclosure Statement [#5-3] at § XI.F, at 53.)  Again, this language places Aetna on notice that the Victory Debtors intended to later pursue claims to recover unpaid health benefits as well as claims related to Aetna's denial of benefits as have been asserted here, whether these claims encompass statutory procedural violations arising under ERISA or state-law claims arising under the Texas Insurance Code.

Finally, the undersigned is not persuaded by Aetna's argument that Victory Parent only has standing to assert those claims brought against Aetna by Victory Parent in the federal district court litigation that was pending prior to Chapter 11 proceedings.  (*See* Disclosure Statement [#5-3] at § XI.B, at 47.)  Section XI.F of the Disclosure Statement addresses future litigation that the Victory Debtors generally may pursue.  This Section does not exclude Victory Parent from the reservation of claims such that Victory Parent is barred from pursuing future litigation. Victory Parent and the Victory hospitals involved in the Chapter 11 proceedings are all Debtors for purposes of the bankruptcy and reservation of claims.

In summary, the Victory Debtors have standing to pursue all the claims arising under ERISA that are challenged by Aetna (Counts 2, 3, and 4), as ERISA is categorically identified in the Amended Disclosure Statement.  (Disclosure Statement [#5-3] at § XI.F, at 53.)  The Victory Debtors also have standing to pursue their claims arising under the Texas Insurance Code (Count 5) and promissory estoppel and negligent misrepresentation (Count 7), as the Amended Disclosure Statement categorically refers to any statute or any other applicable law pertaining to liability for accounts receivables or any other indebtedness owed to an insurance company as a result of the provision of healthcare.  (*Id*.)  Both of these counts concern the failure to reimburse Victory for healthcare benefits:  Count 5 seeks payment and prompt-pay penalties for the failure to reimburse Victory as an out-of-network provider of emergency services at the usual and customary rate (Compl. [#1] at ¶¶ 88–90), and Count 7 seeks damages based on Aetna's misrepresentation in confirming coverage—making a promise to pay Victory and subsequently denying or underpaying benefits (Compl. [#1] at ¶¶ 94–103).  As to Victory's claim for exemplary damages, Aetna has not directed the Court to any authority demonstrating that a post-confirmation debtor is not entitled to the full available damages under governing law in a subsequent lawsuit on properly reserved claims.

**B.     Aetna's motion to dismiss for failure to state a claim should be granted in part and denied in part.**

Aetna has also moved to dismiss Victory's claims under Rule 12(b)(6). "A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983) (quoting Wright & Miller, Federal Practice and Procedure § 1357 (1969)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted).  However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  *See Twombly*, 550 U.S. at 570.  Applying these standards, the only claims that fail to survive Aetna's Rule 12(b)(6) challenge are Victory's claims under Section 502(a)(3) (Counts 2, 3, and 4) and Victory's claim for statutory penalties under ERISA, which should be dismissed in part insofar as Victory relies on a theory of Aetna as *de facto* administrator of fully-funded plans.  As to all other claims, Aetna has failed to establish Victory cannot prove a plausible set of facts that would support the claim and justify relief.

i.    Victory states a plausible claim to recover unpaid plan benefits under ERISA (Count 1) and for breach of contract (Count 5) as to non-ERISA plans.

Section 502(a)(1)(B) of ERISA authorizes a suit by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The existence of an employee welfare benefit plan is thus an essential element of a claim for benefits under Section 502(a)(1)(B) and must be sufficiently pleaded to survive a Rule 12(b)(6) challenge.  *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 856 (S.D. Tex. 2016).  Aetna does not argue that Victory has not pleaded the existence of an employee welfare benefit plan.  Rather, Aetna argues that Victory's claim for unpaid plan benefits should be dismissed for failure to state a claim because "Plaintiffs make only conclusory allegations that Aetna underpaid under [the alleged plan] terms" and fails to "specifically allege how Aetna violated specific terms of any plans references."  (Mot. to Dismiss [#5] at 9–10.)  The undersigned disagrees with Aetna's position.

Victory's Complaint contains extensive factual allegations in support of its claim that Aetna failed to adjudicate and pay patient claims in accordance with the terms of the benefits plans at issue.  Victory alleges that Aetna failed to reimburse Victory at the usual and customary rate for out-of-network providers and failed to pay for covered services under the proper payment methodology and gives numerous examples of the undercompensation of specific patients whose claims were allegedly improperly adjudicated.  (Compl. [#1] at ¶¶ 30, 35, 37, 50–53, 66).  Victory's Complaint also quotes the relevant plan terms and language from ten different benefits plans obtained by Victory during the bankruptcy process as to the methodology for determining the allowable amount of a given claim.  (*Id.* at ¶ 59.)  Victory alleges that none of these methodologies were used correctly by Aetna in determining the allowable amount for the

17

claims at issue in this case, when Aetna made payments to Victory by applying 140% of the Medicare allowable instead of the reasonable and customary rate applicable, as well as miscalculating the value of the Medicare allowable itself.  (*Id.* at ¶ 60.)  These allegations are sufficient to state a plausible claim under Section 502(a) of ERISA, and the cases cited by Aetna in their motion do not dictate otherwise.  *Cf. e.g.*, *Slater v. Sw. Research Inst.*, No. SA-12-CV-01205-XR, 2013 WL 2896848, at *4 (W.D. Tex. June 11, 2013) (granting motion to dismiss for failure to state a claim where complaint failed to mention any provision of ERISA or explain how any of factual allegations supported an ERISA claim).

For those plans not governed by ERISA, Victory alleges a claim for breach of contract. Aetna argues that this claim should be dismissed for the same reason Aetna argues for dismissal of Victory's claim to recover plan benefits under ERISA Section 502(a)(1)(B) of ERISA— insufficient factual allegations of wrongful denial or underpayment of benefits.  For the same reasons the undersigned recommends denying dismissal of Victory's ERISA claim for unpaid benefits, the undersigned will also recommend denying dismissal of Victory's breach of contract claim.  There are sufficient factual allegations in Victory's Complaint to state a plausible claim that Aetna failed to process or pay claims under the terms of the applicable plans and under the payment methodology contained therein as to those plans that are not governed by ERISA.

> ii.    Victory's other ERISA claims for breach of fiduciary duty (Count 2) and for procedural violations of ERISA (Counts 3 and 4) should be dismissed as duplicative of Victory's ERISA claim for unpaid benefits.

Aetna contends that Victory's ERISA claims for breach of fiduciary duty and procedural violations pursuant to Section 502(a)(3) must be dismissed because they are duplicative of Victory's ERISA claim for unpaid benefits.  The undersigned agrees.  ERISA Section 502(a)(3) permits a party to bring a civil action "(A) to enjoin any act or practice which violates any

provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  The Supreme Court has held that Section 502(a)(3) authorizes ERISA plan beneficiaries to bring a suit for individual relief based on an administrator's breach of fiduciary duty.  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

Victory's Complaint alleges in Count 2 that Aetna breached its fiduciary duties to plan participants, and in turn to Victory as assignee, by not paying and by underpaying claims for covered services and by maximizing benefits to Aetna rather than making determinations based on the terms of the applicable plans.  (Compl. [#3] at ¶¶ 70–77.)  By this claim, Victory seeks restitution, injunctive and declaratory relief, and Aetna's removal as breaching fiduciary.  (*Id.* at ¶ 76.)

Lower courts in the Fifth Circuit have diverged on the question of whether the simultaneous pleading of both a claim for unpaid benefits under Section 502(a)(1)(B) and a claim for breach of fiduciary duty under Section 502(a)(3) is permissible, despite a well-developed rule in the Circuit that alternative pleading of these two types of claims is impermissible.  In *Varity Corp. v. Howe*, the Supreme Court considered the viability of a plaintiff's Section 502(a)(3) claims against a plan administrator where plaintiffs alleged they relied on the administrator's false assurances in agreeing to change to a different benefits plan that ultimately reduced their coverage.  516 U.S. at 507–515.  In its discussion regarding the proper scope of Section 502(a)(3) claims, the Supreme Court observed that Section 502(a)(3) serves as a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy."  *Id.* at 512.  The Court further explained that "we should expect that where Congress elsewhere

provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at 515 (internal quotations omitted).

Fifth Circuit decisions interpreting *Varity* created a rule that plaintiffs may only assert a claim pursuant to Section 502(a)(3) for breach of fiduciary duty where "no other appropriate equitable relief is available." *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (affirming district court's grant of summary judgment against plaintiff on Section 502(a)(3) claim because plaintiff had redress that was theoretically available pursuant to Section 502(a)(1)(B), even though plaintiff did not ultimately prevail on this claim). The rule in this Circuit has become that "[w]hen a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under [Section] 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to [Section] 502(a)(3)." *McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000). *See also Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999), *abrogated on other grounds by grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) ("[A]n ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under 29 U.S.C. § 1132.").

This has led the majority of lower courts in this Circuit to dismiss claims for breach of fiduciary duty as a matter of law where a claim to recover plan benefits was the predominant action in the suit and afforded the plaintiff of avenue for legal redress against the plan administrator. *Constantine v. Am. Airlines Pension Benefit*, 162 F. Supp. 2d 552, 557 (N.D. Tex. 2001) ("Because Plaintiff has resorted to the principal remedy for ERISA claimants [Section 1132(a)(1)(B)], she has also failed to state a claim under § 1132(a)(3) as described by the

Supreme Court in *Varity*."); *Hager v. NationsBank Corp. Pension*, No. 3:97-CV-1726G, 1999 WL 1044498, *3 (N.D. Tex. 1999) (dismissing breach of fiduciary duty claim where plaintiff also sued plan administrator for unpaid benefits).   Despite this authority, some courts in this Circuit have still taken a more expansive approach—at least at the pleading stage—and have allowed plaintiffs to plead claims under several subsections of Section 502(a) simultaneously. *See e.g.*, *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 309 (S.D. Tex. 2011), *aff'd sub nom. N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015).   The Court in *N. Cypress Med Ctr.*, for example, reasoned that *Varity* and its Fifth Circuit progeny merely prohibit a plaintiff from ultimately *recovering* on both a claim for unpaid benefits and a claim for breach of fiduciary duty but do not prevent the pleading of both claims to "preserve alternative grounds for relief until a later stage in the litigation."  *Id.*

The court's holding in *N. Cypress Med Ctr.* was more or less an outlier at the time it was written, but in the wake of the Supreme Court's 2011 decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), a few other lower courts have followed suit.   In *Amara*, the Supreme Court considered a district court's ruling in favor of pension plan beneficiaries who alleged that CIGNA had failed to give them proper notice of changes to their benefits through the summary plan documents that were provided, and the change resulted in their receiving less generous coverage.  563 U.S. 421, 424–25.   The district court agreed with plaintiffs that the disclosures made by CIGNA violated its obligations under ERISA, and the court attempted to provide relief under Section 502(a)(1)(B) by reforming the benefits plan and ordering CIGNA to pay benefits accordingly.  *Id.* at 425.   Although the plaintiffs had also asserted a Section 502(a)(3) claim, the district court declined to decide whether that claim was sustainable, finding it unnecessary in light of its holding that Section 502(a)(1)(B) provided an appropriate remedy.  *Id.* at 434.

Upon review, the Supreme Court vacated the lower court judgment and held that reformation of the plan was an equitable remedy not available under Section 502(a)(1)(B). *Id.* at 435–38. The Court reasoned that Section 502(a)(1)(B) only empowers courts to award beneficiaries the benefits they are due "under the terms of the plan" and that summary documents only provide communication about the plan and do not constitute terms of the plan that are enforceable via Section 502(a)(1)(b). *Id.* at 438. Accordingly, the Supreme Court held that reformation of the plan to match the terms of the summary documents was an equitable remedy only available under Section 502(a)(3) and remanded the case for a determination of whether such relief was appropriate under that Section. *Id.* at 439–442, 445.

Some lower courts in this Circuit have interpreted *Amara* as implicitly sanctioning the pleading of alternative means of relief under ERISA and have adopted the more expansive approach allowing the simultaneous pleading of claims under Sections 502(a)(1)(B) and 502(a)(3).[1] *E.g.*, *Peterson v. Liberty Life Assurance Co. of Boston*, No. 1:15-CV-00204-SA-DAS, 2016 WL 3849693, at *3 (N.D. Miss. July 13, 2016) (denying motion to dismiss and allowing plaintiff to plead both claim for denial of benefits and claim for breach of fiduciary duty); *Currier v. Entergy Corp. Employee Benefits Comm.*, No. CV 16-2793, 2016 WL 6024531, at *3–4 (E.D. La. Oct. 14, 2016) (same). As the *Peterson* court observed, "[h]ad the district

---

[1] Multiple circuit courts have also recently interpreted the *Amara* decision as clarifying that a Section 502(a)(3) claim is not automatically undermined by the presence of a Section 502(a)(1)(B) claim. *See N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125, 134 (2d Cir. 2015) ("[I]t is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy. In other words, it is too early to tell if his claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)(B)."); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) (holding, in light of *Amara*, that "*Varity* only bars duplicate recovery and does not address pleading alternate theories of liability"); *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) (interpreting *Amara* as allowing the pursuit of simultaneous claims under both Section 502(a)(1)(B) and Section 502(a)(3), so long as there is ultimately no double recovery prohibited by *Varity*).

court in *Amara* dismissed the breach of fiduciary duty claim at the pleading stage based on the mere presence of the legal claim for benefits, the equitable relief sanctioned by the Supreme Court would not have been available." *Peterson*, 2016 WL 3849693, at *3. This position is also more in keeping with general federal pleading practice, which allows a party to plead alternative claims and defenses, even if ultimately inconsistent. *See also* Fed. R. Civ. P. 8(d)(3) (providing that "a party may state as many separate claims or defenses as it has, regardless of consistency").

However, the majority of district court cases in this Circuit continue to dismiss claims under Section 502(a)(3) where a claim for unpaid benefits is also pleaded, particularly where the two claims are "substantively indistinct" and both stem from the same underlying conduct—the alleged improper denial of benefits. *E.g.*, *Horne v. J.C. Penney Corp.*, No. 14CV2383, 2014 WL 6060434, at *5 (W.D. La. Nov. 12, 2014) (dismissing breach of fiduciary duty claim as duplicative of claim for unpaid benefits under pre-*Amara* Fifth Circuit authority); *Lopez v. Liberty Life Assur. Co. of Boston*, No. CIV.A. H-13-2460, 2013 WL 5774878, at *4 (S.D. Tex. Oct. 24, 2013) (rejecting argument that *Amara* changed general rule that if relief is available under Section 502(a)(1)(B), equitable relief is not available under Section 502(a)(3), and dismissing breach of fiduciary duty claim in light of potential remedy for unpaid benefits).

Additionally, the few Fifth Circuit cases addressing breach of fiduciary duty claims post-*Amara* have not directly addressed the impact the decision might have on Circuit precedent. Rather, the Fifth Circuit has continued to follow pre-*Amara* case law without discussion and enforce a blanket prohibition on the simultaneous pleading of claims for unpaid benefits and breach of fiduciary duty. *See, e.g.*, *Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir. 2017) (reciting the standard set forth in *Tolson* and affirming dismissal of equitable claims in a case that involved a widow seeking benefits from an individual life insurance policy);

*Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (affirming denial of leave to amend on basis that claim for fiduciary duty was futile in light of claim for unpaid benefits).

Although the undersigned is persuaded that the better reading of *Varity* is that it bars duplicative recovery as opposed to alternative pleading, the undersigned is bound by Fifth Circuit precedent insofar as it has held that an ERISA plaintiff may not simultaneously pursue both a claim for unpaid benefits and for breach of fiduciary duty, at least where the claims are both premised on the denial of plan benefits, as opposed to some other wrongful act. The undersigned also agrees with Victory that *Amara* lends further support to a more expansive interpretation of *Varity*, but until the Fifth Circuit directly addresses the question of whether *Amara* implicitly overrules its prior precedent, this Court must dismiss any claim for breach of fiduciary duty that is based on a denial of benefits and pleaded alongside a claim under Section 502(a)(1)(B) complaining of the same. Victory's claim for breach of fiduciary duty, as stated in Count 2, is premised exclusively on Aetna's alleged failure to properly adjudicate the claims of its members by denying or underpaying such claims. (*Id.* at ¶ 75.)  Because Victory has already alleged this claim for benefits denied as a cause of action under Section 502(a)(1)(B), the undersigned will recommend that the Court dismiss his claim for breach of fiduciary duty pursuant to Section 502(a)(3). *See Tolson*, 141 F.3d at 610; *Rhorer*, 181 F.3d at 639.

Aetna focuses its arguments in its motion to dismiss on Varity's Section 502(a)(3) claim for breach of fiduciary duty, but Aetna also seeks dismissal of Varity's other two claims arising under Section 502(a)(3)—Counts 3 and 4. These claims allege Aetna's failure to provide a full and fair review of claims and for other procedural violations of ERISA. (*See* Compl. ¶¶ 78–86.) These claims do raise factual allegations beyond the mere act of denying a claim for benefits,

such as the failure to follow claims procedures, but the ultimate harm complained of is part and parcel to the claims denial itself.  Accordingly, the same Fifth Circuit precedent that bars the simultaneous pleading of Section 502(a)(1)(B) and a breach of fiduciary duty claim under Section 502(a)(3), also compels the undersigned to recommend dismissal of Victory's other two claims arising under Section 502(a)(3).

### iii.  Victory's state-law claims (Counts 5 and 7) should not be dismissed—yet—as preempted by ERISA.

Aetna seeks dismissal of Victory's claims under the Texas Insurance Code (Count 5) and claims of promissory estoppel and negligent misrepresentation (Count 7) as preempted by ERISA.  ERISA provides a uniform regulatory regime over employee benefit plans and includes expansive preemption provisions, preempting any state law that relates to an ERISA plan or conflicts with ERISA's regulatory scheme.  29 U.S.C. § 1144(a); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208–09 (2004).  "Conflict preemption, also known as ordinary preemption, arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir. 2003).  A defendant arguing for conflict or ordinary preemption based on ERISA's preemption clause must prove that: (1) the claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the ERISA Plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.  *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004).  Because ERISA conflict preemption is an affirmative defense, Aetna bears the burden of proof on both elements.  *See Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006).

According to Aetna, Victory's Texas Insurance Code claims are preempted under ERISA's preemption clause, 29 U.S.C. § 1144, because they are all based upon an alleged failure to pay plan benefits and are necessarily derivative of and dependent upon the right to recover benefits under various ERISA plans.  It is true that Victory's claims under the Texas Insurance Code implicate the alleged failure to Aetna to reimburse Victory in accordance with the terms of various plans.  (Compl. [#1] at ¶ 88.)  It is also true that claims processing and payment are areas that both the Fifth Circuit and the Supreme Court have characterized as areas of exclusive federal concern governed by ERISA. *See Bank of La.*, 468 F.3d at 242.  However, ERISA preemption is more nuanced than Aetna's arguments for preemption would suggest, especially in a case involving both self-funded and fully-funded plans, as well as plans allegedly not governed by ERISA, and allegations of both a failure to pay claims and underpayment of claims.

Again, Aetna bears the burden of proof on both elements of the preemption doctrine.  *See id.*  Aetna has failed to satisfy this burden, as it is unclear to the Court at this preliminary stage of the proceedings whether Victory's claims under the Texas Insurance Code all directly affect the relationship among traditional ERISA entities or concern other plans not governed by ERISA that are also at issue in this lawsuit.  Additionally, the Fifth Circuit has distinguished between a claim that implicates the *rate* of payment as set out in a Provider Agreement, rather than the *right* to payment under the terms of the benefit plan.  *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530 (5th Cir. 2009); *see also Electrostim v. Health Care Serv. Corp.*, 614 Fed App'x 731, 737 (5th Cir. 2015) (finding plaintiff's state law claims based on a failure to pay were preempted but state-law underpayment claims were not).  Victory's Texas Insurance Code claim alleges the underpayment of claims "at an amount less than the usual and customary rate." (Compl. [#1] at ¶ 88.)  Aetna has not briefed the Court as to whether this distinction is relevant

for purposes of Victory's claims.  Nor has Aetna briefed the Court on the impact, if any, of the ERISA Savings Clause, 29 USC § 1144(b)(2)(A), or the exception to it found in the "Deemer Clause," 29 U.S.C. §1144(b)(2)(B).  "The Supreme Court had held that only insured plans are exempted from ERISA preemption by the Savings Clause, and that the Deemer Clause preserves ERISA preemption for self-funded plans." *Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Texas, Inc.*, 892 F. Supp. 2d 847, 859 (S.D. Tex. 2012) (citing *FMC Corp. v. Holliday*, 498 U.S. 52 (1990)).  Victory has alleged that both types of plans are at issue here.

Aetna's arguments for the preemption of Victory's promissory estoppel and negligent misrepresentation claims (Count 7) are even less adequate.  In a mere footnote in Aetna's motion to dismiss, Aetna argues that Victory's promissory estoppel and negligent misrepresentation claims are "likely also preempted by ERISA."  (Mot. to Dismiss [#5] at 19 n.32.)  These claims are based on allegations that Aetna made promises to pay for plan participants' medical bills and then subsequently denied or underpaid claims.  The Fifth Circuit has held that similar claims are not preempted by ERISA, as these claims—though concerning statements about the extent of coverage available under an ERISA plan—do not require consultation of a given plan's terms and instead focus on the representations made by an insurer about the extent to which it would pay for services.  *See Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 384–85 (5th Cir. 2011).  *See also Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Texas, Inc.*, 16 F. Supp. 3d 767, 780–81 (S.D. Tex. 2014) (claims of promissory estoppel and negligent misrepresentation based on insured's promises of payment for services were not preempted by ERISA).  Moreover, even if this argument had merit, the undersigned finds that arguing in one sentence in a footnote that a claim "is likely" preempted does not sufficiently brief the Court on this issue so as to satisfy Defendant's burden to establish preemption.

In summary, Aetna has not carried its burden to demonstrate that Victory's Texas Insurance Code claims are preempted by ERISA as to all of the plans at issue in this case or, more accurately, Aetna has failed to distinguish the various plans at issue in this case and to adequately identify which plans are preempted by ERISA.  Aetna has also failed to satisfy its burden to establish preemption as to Victory's negligent misrepresentation and promissory estoppel claims.  Certainly some of Victory's claims are preempted, namely those that involve claims regarding the alleged inappropriate denial of benefits and traditional ERISA entities.  But the Court cannot ascertain without a more robust record and more detailed briefing what subset of these claims must be dismissed as preempted and which can proceed.  Accordingly, the preemption issue should be revisited at the summary judgment stage after the parties have engaged in some discovery as to the plans at issue in this lawsuit.  Aetna's motion to dismiss Victory's Texas Insurance Code and negligent misrepresentation and promissory estoppel claims based on preemption should be denied without prejudice to raising this issue on a properly briefed motion for summary judgment.

> iv.    Victory states plausible claims under the Texas Insurance Code.

Victory's Complaint alleges various violations of the Texas Insurance Code with respect to emergency services, claiming that Texas law requires the reimbursement of an out-of-network provider at the usual and customary rate, regardless of the terms of the plan, Tex. Ins. Code § 1271.155; 28 Tex. Admin. Code § 3.3725.  (Compl. [#1] at ¶ 88.)  Victory also alleges violations of Texas's Prompt Pay Statute for Aetna's alleged failure to timely pay claims under Tex. Ins. Code § 542.058; seeks prompt pay penalties under 28 Tex. Admin. Code § 21.283, Tex. Ins. Code §§ 843.338, 1301.103; and alleges unfair competition under Tex. Ins. Code § 541.003. (Compl. [#1] at ¶ 89.)  Aetna argues that even if Victory's Texas Insurance Code claims are not

preempted, these claims should still be dismissed for failure to state a claim.  The undersigned disagrees.

### a) *Tex. Ins. Code § 1271.155 and 28 Tex. Admin. Code § 3.3725*

Section 1271.155(a) of the Texas Insurance Code provides that a health maintenance organization "shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate."  Section 3.3725(a) of Chapter 28 of the Texas Administrative Code similarly provides that "the insurer must fully reimburse a nonpreferred provider for [certain] emergency care services at the usual and customary rate or at a rate agreed to by the insurer and the nonpreferred provider until the insured can reasonably be expected to transfer to a preferred provider."  Aetna contends these provisions do not provide a private right of action and therefore must be dismissed as a matter of law.  The Court agrees with respect to the administrative code provision.  The administrative code provision cited by Victory in its Complaint is located in Subchapter X of the Code, which in separate section provides that "[t]hese sections do not create a private cause of action for damages or create a standard of care, obligation, or duty that provides a basis for a private cause of action."  28 Tex. Admin. Code § 3.3701(d).

However, the Court is not persuaded based on the current briefing that Section 1271.155(a) of the Texas Insurance Code does not give rise to a private right of action, either on its own or in conjunction with other provisions of the Texas Insurance Code.  Aetna cites no authority for this position, and the undersigned did identify at least two federal court cases reviewing state-law claims that were based in least in part on alleged violations of this provision.  *See Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Tex., Inc.*, 892 F. Supp. 2d 847, 857 (S.D. Tex. 2012) (denying summary judgment on claim brought pursuant to

Chapter 541 of the Texas Insurance Code, which relied on Section 1271.155's requirement to pay a fee for emergency services provided); *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC.*, CV H-08-2336, 2011 WL 12896736, at *10 (S.D. Tex. Aug. 22, 2011) (denying summary judgment on claim seeking facility fees under Section 1271.155 due to question as to whether plaintiff was a "hospital emergent facility or comparable facility" as defined by Texas law).  The undersigned finds that Aetna has failed to demonstrate that as a matter of law that there is no private right of action available under Section 1271.155(a) of the Texas Insurance Code.

> b) *Tex. Ins. Code § 542.058*

Section 542.058 of the Texas Insurance Code requires an insurer to promptly pay claims or pay damages as provided in Section 542.060.  Tex. Ins. Code. § 542.058(a).  Aetna seeks dismissal of this claim on the basis that Victory is not a proper party to bring this claim.  Aetna bases its argument for dismissal on the definition of "claim" set forth in Section 542.051, which provides that "claim" for purposes of the statute means "a first-party claim that (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and (B) must be paid by the insurer directly to the insured or beneficiary." Tex. Ins. Code § 542.051(2).  Because Victory is not an insured, policyholder, or beneficiary, Aetna argues it cannot maintain a claim under Section 542.058.  The undersigned disagrees.

The undersigned has already engaged in a thorough discussion of the assignments at issue in this case, which assigned to Victory all claims and causes of action against "any and all health plans" and specifically references the assignment of claims pursuant to common law or statute. (*See* Section III.A.i *supra*; Assignments [#14-1] at 2–3.)  Aetna provides the Court with no additional authority not previously addressed in this report and recommendation as to why these

assignments would not confer the right of Victory to pursue the statutory claims under the Texas Insurance Code previously belonging to plan participants.  Finding that these assignments cover Victory's claim pursuant to Section 542.058, the undersigned recommends denying dismissal of this claim.

c) *Tex. Ins. Code §§ 843.338, 1301.103*

The Texas Prompt Payment of Physicians and Providers Act sets time standards for claim determinations, specifying how long health maintenance organizations and preferred provider benefit plans have to pay providers. *See* Tex. Ins. Code § 843.338 (rules for HMOs) and Tex. Ins. Code § 1301.103 (rules for preferred provider plan benefits).  Aetna seeks dismissal of these claims on the basis that these claims fail as a matter of law because they do not apply to out-of-network providers like Victory.  Victory's Complaint states that its hospitals are "considered non-participating or out-of-network providers for purposes of this litigation," Compl. [#1] at ¶ 1, and Victory concedes the same in its response to Aetna's motion.

However, Section 843.351 clarifies that the prompt payment provisions in this Chapter do apply to out-of-network providers in instances where those providers provide "care related to an emergency or its attendant episode."  Tex. Ins. Code § 843.351; *N. Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 198 n.76.  Victory argues that it only seeks prompt payment penalties for its emergency services.  Aetna contends that Victory's Complaint fails to sufficiently allege that it maintains any emergency health facility or provides emergency care such that Victory would fall under this exception.

Victory argues that it provided a list of claims to Aetna which were incorporated by reference into its Complaint and that more than 470 of these claims are labeled "EMERGENCY ROOM" and represent a claim for emergency services.  (Resp. [#14] at 11–12.)  This list of

claims has not been presented to the Court for its review, and the Court agrees with Aetna that Victory's Complaint does not contain any explicit factual allegations that Victory rendered emergency services or that Victory is an emergency facility, only that it is a group of medical centers and hospitals providing high-cost orthopedic surgeries.   (Compl. [#1] at ¶1.) Nonetheless, Count 5 of Victory's Complaint does refer to the provision of emergency services in conjunction with its claims under the Texas Insurance Code, and the undersigned finds that it is plausible at the pleading stage that the Victory hospitals at issue had emergency departments and provided emergency services as part of their health care.  (Compl. [#1] at ¶¶ 88–89.)

> *d) Tex. Ins. Code § 541.003*

Finally, Section 541.003 of the Texas Insurance Code provides that "[a] person may not engage in this state in a trade practice that is defined in this chapter as or determined under this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."  The Texas Insurance Code "defines one such practice as a concerted or agreed-upon 'act of boycott, coercion, or intimidation that results in or tends to result in the unreasonable restraint of or a monopoly in the business of insurance.'"  *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 749 (5th Cir. 2015) (citing Tex. Ins. Code § 541.054).   Aetna seeks dismissal of this claim on the basis that Victory cannot rely on this provision as a means to complain about the mishandling of insurance claims.  Victory responds that it has alleged that Aetna engaged in premeditated and calculated conduct to restrain trade by either forcing Victory into an in-network contract or out of business and that this conduct was consistent with Aetna's nationwide strategy regarding out-of-network providers.  (Compl. [#1] at ¶¶ 4–5, 45–46).  The

undersigned agrees with Victory that these allegations could theoretically state a claim regarding

an act of coercion with the potential to result in a monopoly in the business of insurance.[2]

> v.    Victory states plausible claims for promissory estoppel and negligent
> misrepresentation (Count 7).

Victory's claims for promissory estoppel and negligent misrepresentation allege that

before scheduling any non-emergent procedure for Aetna members, Victory contacted Aetna to

confirm whether coverage was available and to obtain specific coverage details.  (Compl. [#1] at

¶¶ 94–103.)  According to Victory, Aetna's representatives falsely confirmed coverage and then

denied or underpaid claims to Victory's detriment.  To succeed on a promissory estoppel cause

of action, a plaintiff must show: (1) a promise, (2) foreseeability of reliance thereon by the

promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660

S.W.2d 521, 524 (Tex. 1983).

Aetna seeks dismissal of Victory's claims of promissory estoppel on the basis that these

claims are barred due to the existence of an express contract that covers the parties' dispute, i.e.,

the health benefit plans issued by Aetna to its members, and that Victory fails to allege any

---

[2]  The undersigned notes, however, that the Fifth Circuit has recognized that the language
of Section 541.054 tracks the language of the "boycott, coercion, or intimidation" exemption
contained in the McCarran–Ferguson Act, and has held that the two laws "should be interpreted
in harmony." *Sanger Ins. Agency*, 802 F.3d at 749.  The McCarran-Ferguson Act is a reverse
preemption clause, aimed at restoring the primacy of the states in regulating insurance by
providing that general federal laws not directed at insurance do not invalidate or supersede state
law governing insurance.  15 U.S.C. § 1012(b); *Sanger*, 802 F.3d at 741.  The Act contains an
exemption for federal antitrust law, which remains applicable to any "act of boycott, coercion, or
intimidation."  15 U.S.C. § 1013(b).
      A boycott for purposes of the McCarran–Ferguson Act exemption occurs where, in order
to coerce a target into certain terms on one transaction, parties refuse to engage in other unrelated
transactions with the target.  *See Hartford Fire Ins. v. California*, 509 U.S. 764, 803–04 (1993).
It is not a boycott within the meaning of the exemption where the challenged conduct is not
concerted activity, i.e., it is only undertaken by individual actors.  *Sanger Ins. Agency*, 802 F.3d
at 746 (citing *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 555 (1978)).  Although the
parties have not addressed this case law in their brief, it appears Victory's claim may be barred
because it does not involve an allegation that Aetna acted in concert with another entity.

promise made outside of the contract.  Aetna is correct that a claim of promissory estoppel is "utterly displaced" in light of a valid contract between the parties covering the alleged promise. *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015). However, the contract identified by Aetna here is between the plan members and Aetna, not Victory, and Victory's Complaint plainly states that it brings this claim not as assignee of the plan members but as a third-party provider in its own right.  (Compl. [#1] at ¶ 95.)  Victory, as an out-of-network provider, alleges it did not have access to the health plan contracts between its patients and Aetna and was not a party to any other contract with Aetna.  Victory's promissory estoppel claims concern promises made directly to Victory by Aetna representatives and alleges that Aetna supplied misinformation regarding coverage confirmation and that Victory relief on this information to its detriment.  The undersigned finds that these allegations state a plausible claim for promissory estoppel separate and apart from any claim that plan members would have had based on a failure to pay under the contract.  *See Mid-Town Surgical Ctr., L.L.P.*, 16 F. Supp. 3d at 781–82 (denying motion to dismiss promissory estoppel claim seeking to enforce alleged oral promise by Humana to pay healthcare provider for medical procedures at a certain rate); *but see Fustok v. UnitedHealth Grp., Inc.*, No. 12-cv-787, 2012 WL 12937486, at *5 (S.D. Tex. Sept. 6, 2012) (dismissing promissory estoppel claim because "preapprovals" did not waive United's right to evaluate the claim when it was later submitted for reimbursement and it was unreasonable for plaintiff to assume payment was guaranteed).

   To succeed on a claim for negligent misrepresentation the plaintiff must prove that: (1) the defendant in the course of his business or a transaction in which he had an interest; (2) supplied false information for the guidance of others; (3) without exercising reasonable care or competence in communicating the information; (4) the plaintiff justifiably relied on the

information; (5) proximately causing the plaintiff's injury.  *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 577 (Tex. App.—Dallas 2007, no pet.).  Victory also sufficiently pleads this claim.   Victory alleges that Aetna falsely confirmed coverage; that based on these representations, Victory provided services to Aetna members; and that Victory's reliance upon Aetna's coverage promises was detrimental to Victory's business operations and cash flow. (Compl. [#1] at ¶¶ 98–101.)   These allegations are also sufficient to satisfy Rule 8's notice pleading standard.  *See Mid-Town Surgical Ctr., L.L.P.*, 16 F. Supp. 3d at 782–83 (denying motion to dismiss negligent misrepresentation claim where healthcare provider alleged reliance on false verification from Humana as to preauthorization and coverage); *but see Innova Hosp. San Antonio, L.P. v. Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 605 (N.D. Tex. 2014) (dismissing negligent misrepresentation claim on basis that pleadings were not sufficient to infer that the information supplied was false and that Defendant did not exercise reasonable care or competence in communicating the information)

> vi.     Victory sufficiently alleges exemplary damages, but its claim for statutory penalties under ERISA should be dismissed in part insofar as Victory relies on a theory of Aetna as *de facto* administrator of fully-funded plans.

Aetna seeks dismissal of Victory's claim for exemplary damages on the basis that the only claim that supports the recovery of exemplary damages is Victory's claim of negligent misrepresentation and that claim, according to Aetna, should be dismissed as a matter of law for the reasons already discussed and rejected.  The undersigned has already discussed its reasons for recommending denial of Aetna's motion to dismiss as to Victory's claim of negligent misrepresentation.  If the Court agrees with this recommendation, and Victory's negligent misrepresentation claim remains in this suit, the Court should also deny Aetna's motion to dismiss as Victory's claim for exemplary damages.

Victory also pleads certain ERISA penalties under 29 U.S.C. § 1132(c)(1), which subjects an ERISA "administrator" who fails to supply requested information to a plan participant to penalties in the amount of $100 a day from the date of such refusal.  Aetna asks the Court to dismiss this claim on the basis that the Complaint fails to sufficiently allege that Aetna is an "administrator" for purposes of this section or that a written request for plan information was ever made.  ERISA Section 3(16)(A) defines "administrator" as: "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."  29 U.S.C. § 1002(16)(A).

The Court is required to accept the well-pleaded allegations in a plaintiff's complaint as true for purposes of ruling on a motion to dismiss.  *Martin K. Eby Const. Co.*, 369 F.3d at 467. Victory's Complaint alleges that Aetna is the plan administrator as to self-funded plans and it is the *de facto* administrator for the fully-funded plans which Aetna insures.  (Compl. [#1] at ¶¶ 26, 62.)  However, during the pendency of Aetna's motion, the Fifth Circuit issued its opinion in *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, -- F.3d --, 2017 WL 6460150 (Dec. 19, 2017), which squarely rejected the theory that a *de facto* plan administrator could be subject to Section 502(c) penalties and held that the statutory penalty only applies to named plan administrators.  *Id.* at *5 (reversing a district court's award of Section 502(c) penalties against Cigna based on its conduct and admissions, despite the fact that it was not a named plan administrator).  Accordingly, the undersigned will recommend that the Court grant Aetna's motion to dismiss as to Victory's claim for statutory penalties under Section 502(c) with respect

to the fully-funded plans which Aetna insures but recommend denying dismissal as to the self-funded plans in which Victory alleges Aetna is the designated plan administrator.

Finally, the undersigned also rejects Aetna's argument that Victory failed to adequately plead the failure to provide plan documents for purposes of its claim for ERISA's statutory penalty.  Victory alleges that it requested both plan and plan associated documents on claims; Aetna refused to provide these documents in the normal course of business; and Victory did not receive any documents until Aetna produced a handful of plans through the bankruptcy process. (Compl. [#1] at ¶ 63.)  These allegations are sufficient to state a plausible claim for relief under Rule 8, and the undersigned will recommend denial of the motion to dismiss on this ground.

### III.  Conclusion and Recommendation

Having considered Victory's Complaint in light of the arguments raised in Aetna's motion, as well as the response and reply thereto, the undersigned recommends that Defendants' Motion to Dismiss Plaintiffs' Complaint and Brief in Support [#5] be **GRANTED IN PART** as follows:

- Victory's claim for breach of fiduciary duty and other procedural violations under Section 502(a)(3) of ERISA (Counts 2, 3, and 4) should be dismissed.

- Victory's claim to recover statutory penalties under Section 502(c) of ERISA should be dismissed insofar as Victory relies on a theory of Aetna as *de facto* administrator.

In all other respects, the undersigned recommends that the motion be **DENIED**.

### IV.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

      SIGNED this 19th day of January, 2018.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE