IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NEIL GILMOUR III, TRUSTEE FOR | § | |
| THE GRANTOR TRUSTS OF VICTORY | § | |
| PARENT COMPANY, LLC;  VICTORY | § | SA-17-CV-00510-FB |
| MEDICAL CENTER CRAIG RANCH, | § | |
| LP,  VICTORY MEDICAL CENTER | § | |
| LANDMARK, LP,  VICTORY MEDICAL | § | |
| CENTER MID-CITIES, LP,  VICTORY | § | |
| MEDICAL CENTER PLANO, LP, | § | |
| VICTORY MEDICAL CENTER | § | |
| SOUTHCROSS, LP,  VICTORY | § | |
| SURGICAL HOSPITAL EAST | § | |
| HOUSTON, LP,  VICTORY MEDICAL | § | |
| CENTER BEAUMONT, LP, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | |
| | § | |
| AETNA HEALTH, INC.,  AETNA | § | |
| HEALTH INSURANCE COMPANY, | § | |
| AETNA LIFE INSURANCE COMPANY, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Victory's Motion to Dismiss Aetna's

Counterclaim [#32].  All pretrial matters in this case have been referred to the undersigned for

disposition pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United

States District Court for the Western District of Texas [#18].  In reviewing the motion to dismiss,

the undersigned has also reviewed Defendants' Response in Opposition to Plaintiffs' Motion to

Dismiss and Brief in Support [#35], Victory's Reply in Support of its Motion to Dismiss Aetna's Counterclaim [#36], and Defendants' Surreply in Opposition to Plaintiffs' Motion to Dismiss and Brief in Support [#37]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiffs' motion be **DENIED**.

## I.  Procedural Background

The undersigned's previous report and recommendation [#23] contains a thorough summary of the underlying facts of this litigation that need not be repeated in full here. Plaintiff Neil Gilmour, III, is Trustee for the Grantor Trusts of seven former orthopedic hospitals and their parent company (collectively "Victory"). (Compl. [#1] at 1.) Victory filed this lawsuit against Defendants Aetna Health, Inc., Aetna Health Insurance Company, and Aetna Life Insurance Company (collectively "Aetna"), alleging a number of claims under various provisions of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, the Texas Insurance Code, and Texas common law. (*Id.* at ¶¶ 64–103.) Victory claims that Aetna failed to pay or underpaid certain out-of-network claims for covered services that Victory provided to Aetna plan members in operating its hospitals and other medical facilities throughout Texas. (*Id.* at ¶ 1.)

Aetna moved to dismiss Victory's Complaint; the undersigned recommended the motion be granted in part and denied in part [#23]; and the Court denied the motion in full [#33]. While the recommendation was pending, Aetna filed its Answer and Counterclaim [#30]. By its Counterclaim, Aetna alleges that Victory engaged in a fraudulent billing scheme to submit excessive charges for services allegedly provided to Aetna's health plan members. (Countercl. [330] at ¶ 3.) Aetna seeks to recover these allegedly improper payments through claims of fraud,

"money had and received," negligent misrepresentation, and unjust enrichment, and also pleads exemplary damages. (*Id.* at ¶¶ 14–37.) Alternatively, Aetna, as an ERISA claim-fiduciary with authority to recover overpayments, seeks the equitable return of plan benefits paid to Victory that are not payable under the terms of the ERISA plans at issue. (*Id.* at ¶¶ 38–42.) Victory filed the motion to dismiss Aetna's counterclaims that is currently before the Court, and Aetna timely filed its Supplemental Counterclaim within 21 days of Victory's motion pursuant to Rule 15(a)(1)(B) [#34]. Aetna's Supplemental Counterclaim reiterates its claims of fraud (Supplemental Countercl. [#34] at ¶¶ 20–31), "money had and received" (*id.* at ¶¶ 32–34), negligent misrepresentation (*id.* at ¶¶ 35–36), unjust enrichment/quantum meruit (*id.* at ¶¶ 37–42), exemplary damages (*id.* at ¶ 43), and equitable relief under ERISA (*id.* at ¶¶ 44–48).

Although a motion to dismiss may be rendered moot by a supplemental or amended pleading, neither party suggests that is the appropriate course here. Aetna's Supplemental Counterclaim makes only minor additions to the factual allegations contained in its Original Counterclaim and does not add any additional claims. Moreover, Victory's primary argument for dismissal focuses on alleged pleading defects related to actions taken in the prior bankruptcy proceeding that would not be cured by an amended pleading. *Cf. Maxim Integrated Prods., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. SA–14–CV–1030–XR, 2015 WL 10990119, at *1 (W.D. Tex. Feb. 12, 2015) ("Especially given the substantive changes in the amended complaint, new causes of action, and more specific facts about the infringement that may go to the heart of the motion to dismiss, the Court finds State Farm's motion to dismiss is moot."). Accordingly, the undersigned will consider the arguments made in Victory's motion to dismiss as they apply to the Supplemental Counterclaim, rather than dismissing as moot Victory's motion and requiring Victory to file a new motion to dismiss. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, Federal Practice and Procedure § 1476 (3d ed. 2002) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance.").

Victory's motion to dismiss seeks dismissal of Aetna's counterclaims pursuant to Rule 12(b)(1) for lack of standing and pursuant to Rule 12(b)(6) for failure state a claim upon which relief can be granted under general federal pleading standards (Rule 8) and the heightened pleading standards applicable to claims sounding in fraud (Rule 9). Aetna has responded to Victory's motion, and it is now ripe for the Court's review.

## II. Analysis

Victory moves this Court to dismiss all of Aetna's counterclaims on the basis that they are either barred for lack of standing or fail to state a claim upon which relief can be granted. The Court should deny Victory's 12(b)(1) motion because Aetna has the right to assert its counterclaims as a defensive setoff against Victory's claims in this lawsuit. Additionally, Aetna has met its pleading burden with regard to its other claims, and Victory has failed to satisfy its burden to demonstrate that these claims fail as a matter of law at this preliminary stage of the proceedings.

**A.  Aetna has the right to assert its counterclaims as a defensive setoff against Victory's claims.**

Victory moves to dismiss Aetna's counterclaims pursuant to Rule 12(b)(1), arguing that Aetna lacks standing to bring any of its counterclaims because all of the claims were discharged in prior bankruptcy proceedings. As explained in the undersigned's prior Report and Recommendation [#23], Victory Parent Company, LLC ("Victory Parent") and five Victory

hospitals (collectively "Victory Debtors") filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015. (Compl. [#1] at ¶ 7–11, 13.) The First Amended Plan of Reorganization was confirmed on March 28, 2016 in Case No. 15-42373 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. (*Id.* at ¶ 14.) A copy of the First Amended Plan of Reorganization ("the Plan") [#5-2] was attached to Aetna's motion to dismiss that was the subject of the undersigned's prior report and recommendation. In reviewing Aetna's motion to dismiss, the undersigned concluded that the Victory Debtors had standing to pursue their post-confirmation claims to recover unpaid benefits under ERISA and state law because these claims were reserved by the Plan and a related Disclosure Statement [#5-3], also attached to Aetna's motion to dismiss. The District Court endorsed this interpretation in its subsequent Order on the Report and Recommendation [#33]. Accordingly, the current question before the Court is whether Aetna's counterclaims—various claims arising under state law and ERISA—are barred because they were not properly preserved in the bankruptcy court for post-confirmation litigation.

Because the counterclaims all concern conduct occurring prior to the filing of the bankruptcy petition, Victory contends Aetna's counterclaims are barred by the Plan and Confirmation Order rendered by the bankruptcy court. Aetna responds that it did not need to preserve any of its counterclaims by filing a proof of claim during the bankruptcy for two reasons: (1) its counterclaims are technically "setoffs" under Section 553 of the Bankruptcy Code and therefore may be raised regardless of whether the counterclaims would otherwise have been previously discharged in bankruptcy; and (2) the confirmation of a Chapter 11 plan does not discharge a liquidating corporate debtor like Victory, and therefore claims against the estate of the debtor are not enjoined post-confirmation. Additionally, Aetna points out that not all of

the Plaintiffs in this case filed for bankruptcy or were part of the Chapter 11 bankruptcy proceedings resulting in the Plan and Confirmation Order. Victory does not dispute this fact.

Victory replies that even if Aetna's counterclaims are characterized as setoffs, Aetna waived its right to assert any setoff because it failed to provide notice of its intent to enforce any setoffs within 30 days of the Plan's effective date as required by the Plan. As to Aetna's other argument regarding the lack of any discharge of Victory, Victory contends that the bankruptcy court granted a discharge to two of the Victory Debtors—Victory Medical Center Mid-Cities, LP and Victory Medical Center Plano, LP—upon the completion of a merger, combination, or acquisition and filing of a Certificate of Completion with the Court. Victory contends that these entities filed their Certificates of Completion as of September 27, 2016 and May 7, 2018, respectively. Victory claims that the Plan's Injunction clearly prohibits claims against all other Victory Debtors. In surreply, Aetna argues its statutory right to a setoff under the Bankruptcy Code, as endorsed by the Fifth Circuit, trumps any procedural requirement in the Plan. Furthermore, Aetna maintains that the Plan language itself reserves Aetna's setoff rights.

Victory couches its argument for dismissal of Aetna's counterclaims as one of standing. Standing is a jurisdictional principle that requires a plaintiff to demonstrate a right to seek redress in the federal courts by showing the following: (1) an injury in fact, i.e., an invasion of a legally protected interest which is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Victory argues that Aetna has not suffered an injury in fact because it failed to preserve its counterclaims in the bankruptcy proceeding, so these claims and the injury underlying them do not exist. Normally, in the context of a 12(b)(1) motion challenging

standing, the party invoking federal jurisdiction (i.e., the plaintiff) bears the burden of establishing the three elements of standing. *Id.* at 561.

Courts in this Circuit have analyzed motions to dismiss for lack of standing based on failure-to-preserve claims by a debtor (like Victory) for post-confirmation prosecution as jurisdictional under Rule 12(b)(1), as the undersigned did in its prior report and recommendation. *See, e.g.*, *Adler v. Walker (In re Gulf States Long Term Acute Care of Covington, L.L.C.)*, Civil Action No. 11–1659, 2012 WL 710924, * 2–3 (E.D. La. March 5, 2012), *aff'd*, 614 F. App'x 714 (5th Cir. 2015) (per curiam). However, the undersigned is not convinced that Victory's argument regarding the counterclaims should be analyzed in this same manner. Victory has not identified for the Court any case in which an argument about the ability of a creditor to assert a counterclaim against a bankruptcy trustee in a post-confirmation lawsuit has been addressed as an issue of standing. Nor was the undersigned able to identify any such case through an independent search of the case law. Accordingly, Victory's argument is more appropriately characterized as a challenge pursuant to Rule 12(b)(6), in which Victory, as the moving party, is the party bearing the burden of demonstrating that governing law bars Aetna's counterclaims. Victory has failed to do so.

Victory's motion to dismiss based on acts not taken in the bankruptcy court should be denied. First, it is undisputed that not all of the Victory hospitals filed for bankruptcy. Accordingly, nothing bars Aetna from filing counterclaims against Plaintiffs Victory East Houston and Victory Beaumont, the two hospitals not involved in bankruptcy proceedings. Moreover, the undersigned agrees with Aetna that the Bankruptcy Code permits it to raise its counterclaims as a defensive setoff against Victory's claims in this lawsuit regardless of what actions were (or were not) taken by Aetna during the pendency of the bankruptcy.

Generally speaking, a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or *offset* any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2) (emphasis added). However, the Bankruptcy Code also expressly preserves the right of a creditor "to offset a mutual debt . . . that arose before the commencement of the case" between a debtor and a creditor. 11 U.S.C. § 553(a). This provision incorporates into bankruptcy law an equitable right that exists under nonbankruptcy law for parties holding mutual debts to resolve their liabilities by deducting or offsetting one obligation from the other. 5 Alan N. Resnick & Henry J. Sommer eds., *Collier on Bankruptcy* ¶ 553.01 (15th ed. rev. 2003).

A setoff or an offset is defined as "[a] defendant's counterdemand against a plaintiff, arising out of a transaction *independent* of the plaintiff's claim" or "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." *Black's Law Dictionary* 1404 (8th Ed. 2004) (emphasis added). The right to a setoff is not to be confused with a right of recoupment, which is the "[r]eduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction." *Id.* at 1302.

The Fifth Circuit has recognized the "apparent inconsistency between § 524(a)(2)'s prohibition on offsets and § 553's recognition of setoff rights" and yet has held that "a debtor's discharge in bankruptcy does not bar a creditor from asserting its right to setoff." *In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001). In doing so, the Fifth Circuit has reasoned that where the use of Section 553 is defensive, the spirit of Section 524(a)(2)'s prohibition on debt collection efforts by a creditor is not violated. *Id.* at 333–34. This interpretation "preserv[es] the creditor's right to raise a discharged debt as a defense to a recovery action brought by a debtor" while "preventing affirmative action [by the creditor] to collect the discharged debt." *Id.* at 333. The

Plan confirmed by the Bankruptcy Court itself embraces this principle in its provision addressing the preservation of setoff rights by stating that "[n]either this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein . . . ." (Plan [#5-2] at 22.) Based on these principles, neither the discharge of Victory's debt in bankruptcy nor the injunctive provision of the Confirmation Order is a bar to Aetna's assertion of its right to setoff.

Additionally, Aetna's pleadings satisfy the three requirements to pursue it setoff rights in this lawsuit. In order to establish a valid right to setoff under Section 553, a counterclaimant must prove only three things: (1) a debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; (2) a claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt and claim must be mutual obligations. *In re Luongo*, 259 F.3d at 334 (5th Cir. 2001); *see also* 11 U.S.C. § 553. A mutual obligation is one in which the opposing debts involved "are between the same parties standing in the same capacity, the requisite for mutuality." *In re Luongo*, 259 F.3d at 334. Aetna has sufficiently pleaded that the two debts at issue arose prior to the commencement of the bankruptcy case, and the requirement of mutuality is clearly established here as the debts involve the same parties standing in the same capacity. *See id.*

There is no additional fourth requirement that a creditor file a proof of claim in the bankruptcy court to assert a setoff, as argued by Victory. Courts within and outside of this Circuit have reasoned that the Bankruptcy Code does not impose any additional procedural mechanism on a creditor seeking to assert an equitable right to setoff, even within the context of discharged debt. *See, e.g.*, *In re Sutton Invs., Inc.*, 53 B.R. 226, 230 (Bankr. W.D. La. 1985) ("The trustee however would have the court insist upon yet another requirement, namely: that the

claiming creditor must have first filed a proof of claim. . . . Section 553 does not contain a requirement that a creditor seeking to exercise a setoff must first file a proof of claim."); *see also In re Davidovich*, 901 F.2d 1533, 1539 (10th Cir. 1990) (reasoning that "a creditor's right to setoff [i]s a universally recognized right grounded in principles of fairness that [i]s not, with a few limited exceptions, affected by the Bankruptcy Code . . . [, and therefore] filing a proof of claim is not a prerequisite to assertion of a right to setoff under 11 U.S.C. § 553").

Accordingly, Aetna may assert its counterclaims against Victory, regardless of any discharge of any Victory Debtor in bankruptcy and despite the fact that Aetna did not file a proof of its counterclaims in the bankruptcy court. To that end, the undersigned need not address Aetna's second argument raised in response to Plaintiffs' motion to dismiss that Victory, as a liquidating corporate debtor, was not discharged in bankruptcy in the first place, nor Victory's contentions in response.

The undersigned is not persuaded by Victory's waiver argument that Aetna waived any right to a setoff by failing to comply with the procedural requirements set forth in the Bankruptcy Court's Plan either. Section 12.6 of the Plan is entitled "Preservation of Setoff and Recoupment Rights." (Plan [#5-2] at 22.) This clause provides:

> In the event that the Debtors have a Claim of any nature whatsoever against the Holders of Claims, the Debtors or Grantor Trustee, as applicable, may, but is not required to setoff or recoup against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or Grantor Trustee, as applicable, of any claim that the Debtors have against the Holder of Claims. Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such right shall not be permitted unless the Creditor provides the Debtors or Grantor Trustee, as applicable, with written notice of the intent to effect such setoff or recoupment within thirty (30) days of the

Effective Date. Failure by a Creditor to assert the right to setoff or recoupment against the Debtor(s) within this thirty (30) period shall result in a permanent waiver of the right to setoff or recoupment by the Creditor and the claim will no longer be enforceable against the Debtor(s). If the Debtors or Grantor Trustee, as applicable, object in writing within twenty (20) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court. In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the claim held by the Bankruptcy Estate. <u>Additionally, to the extent that any Debtor asserts a claim against any party, that party may assert any valid setoff rights against claims asserted by the Debtors.</u> Debtors' right to dispute or challenge any setoff alleged against any Debtor is preserved. After the Effective Date, the Grantor Trustee shall exercise the rights of the Debtors.

(*Id.*) (emphasis added). Victory argues that Aetna waived its right to assert any claim for setoff because it did not provide written notice within 30 days of the Effective Date of the Plan as required by Section 12.6. The undersigned agrees with Aetna that Section 12.06 preserves and reiterates the right to assert a defense setoff claim by any party by stating that "to the extent that any Debtor asserts a claim against any party, that party may assert any valid setoff rights against claims asserted by the Debtors." There is no requirement of 30-day notice attached to this provision.

In summary, Victory has not established that Aetna's failure to file a proof of claim as to its counterclaims is a bar to the defensive assertion of these claims as a setoff or that these claims are subject to waiver based on the Plan language. The Court should deny Victory's motion to dismiss on this ground.

**B.      Aetna has met its pleading burden with regard to its counterclaims.**

Victory also moves to dismiss all of Aetna's counterclaims pursuant to Rule 12(b)(6). "A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983) (quoting Wright & Miller, Federal Practice and

Procedure § 1357 (1969)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570. Applying these standards, Victory has failed to establish Aetna cannot prove a plausible set of facts that would support its claims and justify relief.

i.     <u>Aetna adequately pleads its claims of fraud and negligent misrepresentation.</u>

Victory contends that the Court should dismiss Aetna's counterclaims of fraud and negligent misrepresentation because these claims fail to satisfy Rule 8 and Rule 9(b). Aetna's fraud and negligent misrepresentation claims are based on allegations that Victory engaged in an

overbilling scheme of enticing Aetna's members into receiving services at their out-of-network facilities by promising their services at little to no costs to the members. (Supplemental Countercl. [#34] at ¶ 8.) Aetna members would then submit to Aetna false, misleading, and excessive medical claims containing material misrepresentations about the services provided for Aetna members. (*Id.* at ¶¶ 8, 20, 21.) According to Aetna, Victory's billed charges exceeded any reasonable charges for the claimed services, billing Aetna's members at least 300% to 400% of what other facilities billed for the same services, particularly for implants. (*Id.* at ¶ 9.) Aetna claims that Victory's overbilling scheme also included the payment of referral fees to referring physicians, fees that were not reflective of the reasonable value of services actually provided. (*Id.* at ¶ 11.) In summary, Victory is accused of misrepresenting the charges incurred by patients, the services provided by Victory, and Victory's cost of procuring certain supplies and implants. (*Id.* at ¶¶ 18, 35.) Aetna alleges that Victory knew the representations in Victory's claim submissions were false, and Aetna relied on these representations, which resulted in the overpayment of claims. (*Id.* at ¶¶ 10, 22–24.)

These allegations satisfy Rule 8. The elements of fraud under Texas law include: (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result. *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). The elements of a cause of action for negligent misrepresentation under Texas law are: (1) a representation made in the course of business; (2) that is false; (3) made without the of exercise reasonable care or competence in obtaining or communicating the information; and (4) justifiable reliance on the

representation; (5) resulting in pecuniary loss. *LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 458 & n.8 (5th Cir. 2011) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). Aetna pleads all of the requisite elements of these claims, so as to satisfy general federal pleading standards.

Rule 9(b) imposes a heightened pleading standard on all claims sounding in fraud. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Where a plaintiff's fraud and negligent misrepresentation claims are based on the same set of alleged facts, as here, the Fifth Circuit imposes Rule 9(b)'s heightened pleading standard on both claims. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims.")

Pleading fraud with particularity in this Circuit requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby," i.e., the "who, what, when, where, and how" of the alleged fraud. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178–79 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994)); *see also Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010). The requirements of Rule 9(b) "apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 557

(S.D. Tex. 2012), *aff'd sub nom. Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014) (internal quotation omitted).

Aetna's allegations also satisfy Rule 9(b). The Fifth Circuit has recognized that "[w]hat constitutes 'particularity' will necessarily differ with the facts of each case." *Benchmark Elecs., Inc.*, 343 F.3d at 724 (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)). "Similarly, it has been widely held that where the fraud allegedly was complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied." *U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206 (E.D. Tex. 1998) (collecting cases). Here, Aetna alleges on ongoing fraudulent billing scheme involving continuous overbilling and misrepresentations of the cost and services rendered. Aetna further identifies the relevant period of Victory's fraudulent misrepresentations, which is the time period relevant to Victory's claims and this lawsuit from 2010 to 2015. Other courts have found such allegations to be sufficient under Rule 9(b), even without the identification of the specific individual employees or representatives responsible for communicating the fraud. *See, e.g.*, *Conn. Gen. Life Ins. Co. v. Sw. Surgery Ctr., LLC*, No. 14-CV-08777, 2015 WL 6560536, at *6 (N.D. Ill. Oct. 29, 2015) ("Cigna's complaint alleges that CMIS (who) submitted fraudulent claims regarding charges to patients (what) for treatment at its surgical center (where) between 2009 and 2013 (when) seeking reimbursement from Cigna based on 'grossly overstated' charges for services provided (how). Based on the allegations as a whole, Cigna has sufficiently pled the who, what, when, where, and how necessary to satisfy Rule 9(b)'s pleading standards."). The Court should not dismiss Aetna's fraud and negligent misrepresentation claims at this pleading stage.

ii.   Aetna's claim for exemplary damages should not be dismissed.

Victory argues that Aetna's claim for exemplary damages should be dismissed because Aetna fails to plead a plausible claim of fraud. *See* Tex. Civ. Prac. & Rem. Code § 41.003(a) (providing that exemplary damages may only be awarded only if claimant proves by clear and convincing evidence that harm alleged results from fraud, malice, or gross negligence). Because the undersigned finds that Aetna's fraud claim should survive Victory's motion to dismiss, the Court should not dismiss Aetna's claim for exemplary damages either.

iii.   Aetna adequately pleads its unjust enrichment, quantum meruit, and "money had and received" claims.

Aetna's counterclaim seeks the return of Aetna's overpayments to Victory based on the equitable theories of "money had and received" and unjust enrichment/quantum meruit. (Supplemental Countercl. [#34] at ¶¶ 32–34, 37–42). Victory argues these claims should be dismissed because Aetna's claims for overpayment are time-barred by the Texas Insurance Code, because Aetna did not give the required written notice of an alleged overpayment within 180 days of the date the provider received the payment. *See* Tex. Ins. Code §§ 843.350(a)(1) (HMO plans); 1301.132(a)(1) (PPO/POS plans). This is an issue for summary judgment, as it requires the consideration of evidence external to the pleadings. Victory has not provided the Court with any case law supporting the dismissal of a claim for unjust enrichment or other equitable theories based on the overpayment of an insurance claim at this early stage in the proceedings.

Victory also contends that Aetna's equitable claims fail as a matter of law because express contracts (i.e., each patient's medical plan) govern payment terms. The Court should dismiss this argument. Victory itself conceded in an earlier filing that there is no valid contract between Aetna and Victory that covers the subject of the claims regarding billing. (Victory

Resp. to Mtn. to Dismiss [#14] at 19–20.) A patient's medical plan is a contract between the patient and Aetna.

Finally, Victory argues for the dismissal of Aetna's quantum meruit/unjust enrichment claim on the basis that Aetna has failed to plead any of the requisite elements of this claim. Quantum meruit is a theory of recovery based on principles of unjust enrichment. *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 588 (N.D. Tex. 2013) (citing *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)). To plead a claim of quantum meruit, a party must allege (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Id.* The plaintiff pursuing a quantum meruit action "must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 713 (E.D. Tex. 2006).

Aetna pleads that it paid benefits to Victory based on false billed amounts and Victory obtained a benefit from Aetna through its fraudulent billing practices, which resulted in Victory's unjust enrichment. (Supplemental Countercl. [#30] at ¶ 33.) While it is true that Aetna's insureds were the immediate beneficiaries of the medical services and insurance coverage provided, taking the facts alleged in the light most favorable to Aetna, Aetna has pleaded that it undertook its efforts also for Victory's benefit by reimbursing Victory for services rendered. *See Team Healthcare/Diagnostic Corp. v. Blue Cross & Blue Shield of Tex.*, No. 3:10-CV-1441-BH, 2012 WL 1617087, at *6 (N.D. Tex. May 7, 2012) (collecting cases). Accordingly, Aetna has

stated a plausible claim for quantum meruit/unjust enrichment based on the overpayment of medical claims submitted by Victory.

     iv.     <u>Aetna has adequately pleaded its claim for equitable relief under ERISA.</u>

Finally, the Court should not dismiss Aetna's claim for equitable relief under ERISA. Plan participants, beneficiaries, and fiduciaries may bring a civil action under ERISA to enjoin any act or practice that violates certain provisions of ERISA. 29 U.S.C. § 1132(a)(3). Victory contends that Aetna lacks standing to allege its ERISA claim because Aetna fails to allege any facts supporting its fiduciary status with respect to any plan at issue and that Aetna has failed to allege the necessary elements of its ERISA claim.

The elements of a claim for equitable relief by a fiduciary under ERISA are: (1) the fiduciary seeks the restitution of specifically identified funds; (2) the funds belong in good conscience to the plan; and (3) the funds are within the defendant's possession and control. *Verizon Employee Benefits Comm. v. Frawley*, CIV.A. 3:05-CV-2105-P, 2007 WL 2051113, at *2 (N.D. Tex. July 12, 2007), *disapproved in later proceedings on other grounds by Verizon Employee Benefits Comm. v. Frawley*, 655 F. Supp. 2d 644 (N.D. Tex. 2008), *aff'd*, 326 F. App'x 858 (5th Cir. 2009). Aetna alleges that Victory submitted certain medical claims under employee benefit plans governed by ERISA; Aetna is an ERISA claim-fiduciary; Victory is in actual or constructive possession of funds belonging in good conscience to Aetna; and Aetna has authority to recover overpayments on its own behalf or as a beneficiary of Aetna plan members. (Supplemental Countercl. [#34] at ¶¶ 44–46.) Aetna has sufficiently alleged the requisite elements of its ERISA claim for equitable relief.

As to Victory's claim that Aetna has not sufficiently pleaded that it is a fiduciary of an ERISA plan, the undersigned finds this argument to be disingenuous. A person assumes

fiduciary status in three ways: as a named fiduciary in the instrument establishing the employee benefit plan; by becoming a named fiduciary pursuant to a procedure specified in the plan; or as a functional fiduciary "to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." *Perez v. Bruister*, 823 F.3d 250, 259 (5th Cir. 2016) (quoting 29 U.S.C. § 1002(21)(A)(i)). Count two of Victory's Complaint is premised entirely upon Aetna's identity as a functional fiduciary. (*See* Compl. [#1] at ¶ 67 ("Aetna acted as a fiduciary . . . because Aetna exercised discretion in determining whether plan benefits would be paid . . . ."); ¶¶ 70–77 (alleging Aetna breached its fiduciary duties to its plan members under ERISA pursuant to 29 U.S.C. § 1132(a)(3)). It is disingenuous for Victory to plead that Aetna is a claim fiduciary for purposes of its breach of fiduciary duty claim under ERISA and then argue in a motion to dismiss that Aetna has failed plead facts that would establish it is a claim fiduciary under ERISA. The Court should allow Aetna's equitable claim under ERISA to proceed.

### III.  Conclusion and Recommendation

Having considered Aetna's Counterclaim in light of the arguments raised in Victory's motion, the response and replies thereto, and the governing law, the undersigned recommends that Victory's Motion to Dismiss Aetna's Counterclaim [#32] be **DENIED**.

### IV.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 11th day of October, 2018.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE