**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **NEIL GILMOUR, III, TRUSTEE FOR THE GRANTOR TRUSTS OF VICTORY PARENT COMPANY, LLC, VICTORY MEDICAL CENTER CRAIG RANCH, LP, VICTORY MEDICAL CENTER LANDMARK, LP, VICTORY MEDICAL CENTER MID-CITIES, LP, VICTORY MEDICAL CENTER PLANO, LP, VICTORY MEDICAL CENTER SOUTHCROSS, LP, VICTORY SURGICAL HOSPITAL EAST HOUSTON, LP, AND VICTORY MEDICAL CENTER BEAUMONT, LP,** | § § § § § § § § § § § § § | **CIVIL ACTION NO. 5:17-cv-00510-FB** |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **AETNA HEALTH INC., AETNA HEALTH INSURANCE COMPANY, AND AETNA LIFE INSURANCE COMPANY,** | § § § § § | |
| **Defendants.** | § § | |

---

**DEFENDANTS' MOTION FOR SANCTIONS
FOR FAILURE TO PRODUCE A WITNESS FOR DEPOSITION**

---

Defendants Aetna Health Inc., Aetna Health Insurance Company, and Aetna Life Insurance Company (collectively, "Aetna") file this Motion for Sanctions for Failure to Produce a Witness for Deposition against Plaintiffs Neil Gilmour, III, Trustee for the Grantor Trusts of Victory Parent Company, LLC, Victory Medical Center Craig Ranch, LP, Victory Medical Center Landmark, LP, Victory Medical Center Mid-Cities, LP, Victory Medical Center Plano, LP, Victory Medical Center Southcross, LP, Victory

Surgical Hospital East Houston, LP, and Victory Medical Center Beaumont, LP (collectively, "Victory"). For the reasons set forth below, this Court should award Aetna its reasonable costs and fees associated with Plaintiffs' discovery abuse.

## I.   INTRODUCTION

Following Chapter 11 bankruptcy proceedings, Victory's Bankruptcy Trustee filed this suit to recover purported "accounts receivables" on healthcare claims submitted by Victory, and Aetna countersued Victory for damages for healthcare fraud. Prior to the bankruptcy, Shannon Osteen was Victory's Vice-President of Finance (and former CFO of Victory Parent), and has been identified as a person with knowledge of facts relevant to Aetna's fraud allegations. Per an agreement with Plaintiffs, Aetna noticed Mr. Osteen's deposition for 10:00 a.m. on July 18, 2019, at the offices of Plaintiffs' counsel, Thompson & Knight. At the scheduled time and place, however, Plaintiffs' counsel indicated that Mr. Osteen was present but Plaintiffs would not produce him to testify on that date because of a "conflict" related to the Trust. Notably, separate (criminal) counsel for Robert Helms— Victory's former CEO and controlling secured creditor[1]—attempted to attend the deposition, which apparently contributed to this "conflict."[2]

Regardless of the cause, Aetna incurred fees and costs for this properly noticed

---

[1]    Helms's company, Helms-Patel, LLC, is the Collection Agent under the Bankruptcy Plan, tasked with collecting the receivables of each of the Debtor-Plaintiffs, and gets compensated based on the collections. Helms's other company, HPRH Investments, LLC, has a secured claim in the amount up to $2.3 million, and Helms, individually, has an unsecured Class 6 Claim in the amount of $8 million. *See* Civ A. No. 15-42373-rfn11, Amended Disclosure Statement, Dkt. No. 777, at pp. 10, 15, 18, 21-22, & 31-41.

[2]    The issue of whether or not Mr. Helms's personal counsel may attend the depositions of deponents that he does not represent is a separate issue, but Aetna intends to seek relief from the Court regarding that issue in a separate motion for protective order.

deposition, where Plaintiffs, without warning, refused to produce their witness. Aetna will subpoena Mr. Osteen to appear at a future date if necessary, but for the reasons set forth below, this Court should award Aetna its reasonable costs and fees incurred for the scheduled deposition and events that ensued at that time, as well as for this motion.

## II.    BACKGROUND

### A.    Aetna Has Been Pursuing Evidence Regarding Victory's Healthcare Fraud

Aetna's contentions regarding Victory's fraudulent insurance scheme include allegations that Victory made lucrative kickback payments to physicians for performing elective procedures at Victory's pricey out-of-network facilities.[3] There is evidence that the kickbacks were funneled through "marketing companies" and "implant companies" in an effort to make them look legitimate. Several Victory witnesses presumably have knowledge of the purpose of the (very) large sums of money that Victory paid to marketing and implant companies, but none, so far, will answers those questions.

For example, Victory's former *Comptroller* and Rule 30(b)(6) corporate representative on Victory's operational costs (Randy Gabriel) claimed not to know anything about the purpose of *tens of millions* of dollars in payments to "related" marketing and implant companies reflected in Victory's *financial documents*. Interestingly, Mr. Gabriel is currently employed by Robert Helms for the sole purpose of supporting Victory's post-bankruptcy litigation, yet he claimed to know nothing about Victory's implant or marketing costs, or distribution payments made to physicians.

---

[3]    *See, e.g.,* Docket No. 34 at ¶¶ 8–11.

Furthermore, Victory refused to produce a corporate representative on its relationships with and payments to physicians until the hearing on Aetna's Motion to Depose Andrew Hillman in Prison on May 11, 2019 (but they still have not actually done so).

Meanwhile, on July 11, 2019, Aetna deposed Mr. Hillman, who was Victory's former investor, business developer, and physician recruiter. Mr. Hillman previously testified in a criminal trial in early March regarding operations at Victory, including how the physician kickbacks were funneled through marketing and implant companies owned by physicians (but that were not set up to look that way), and that Mr. Helms, the driving force behind this litigation, was personally involved. He also testified that Victory lured patients to its pricey facilities by promising not to collect patient co-insurance or deductible responsibility. When asked those same questions by Aetna in his deposition, Mr. Hillman refused to answer based on a claimed Fifth Amendment privilege (which Aetna will address separately).

Now, when Aetna was about to depose Shannon Osteen, whom Victory self-identified as a person having knowledge of its marketing and implant payments, Mr. Helms's criminal lawyer shows up and effectively causes the Plaintiffs to refuse to produce Mr. Osteen. This material witness is being withheld without justification.

**B.      Shannon Osteen Has Information Relevant To Aetna's Allegations of Fraud**

Based on information produced by Victory, Mr. Osteen was Victory's Vice-President of Finance and, at certain times, the CFO for Victory Parent Company. Indeed,

-4-

Mr. Osteen "manage[d] the accounting operations of the company,"[4] including:

- Creating the list of physician-owners and their distribution amounts;[5]

- Handling payments involved in Victory's ***marketing*** agreements;[6] and

- Approving implant payments to the implant companies.[7]

This information is highly relevant to Aetna's claims against Plaintiffs, and as such, Aetna requested to depose Mr. Osteen.

Additionally, on May 31, 2019, Victory identified Mr. Osteen as an "individual likely to have discoverable information . . . that [Victory] may use to support its claims or defenses[.]"[8] Specifically, Victory disclosed that Mr. Osteen "has knowledge regarding Victory's billing records (i.e., itemized statements, UB04s), corporate structure, operations (i.e., operating agreements, investor information and distributions, etc.), and accounts receivable." *Id.* at p. 4. The address and telephone number provided to contact Mr. Osteen was the address and telephone number of Victory's counsel. *Id.*

## C.    Plaintiffs Agreed To Present Mr. Osteen For Deposition On July 18, 2019

On April 24, 2019, counsel for Aetna wrote Plaintiffs' counsel asking to depose Mr. Osteen. *See* Ex. 1 (April 24, 2019 letter). Plaintiffs agreed, and on June 19, 2019, counsel

---

[4]    *See* V0094287. Aetna references documents produced by Victory and testimony given by Victory's corporate representative, Randy Gabriel, for this background information. Given Victory's confidentiality designations and in the interest of efficiency, Aetna is not attaching those references.

[5]    Feb. 28, 2019 Dep. Tr. of Randy Gabriel ("Gabriel Transcript"), at 89:18-95:08.

[6]    *See* V0090808.

[7]    *See* Gabriel Transcript, at 117:06-22.

[8]    *See* Ex. 2 (Victory's First Amended Initial Disclosures).

for the parties confirmed in writing that Plaintiffs would present Mr. Osteen for deposition at Thompson & Knight's Houston office on July 19, 2019. Aetna served a notice of deposition of Shannon Osteen on Victory's counsel.

On June 25, Plaintiffs' counsel advised that Mr. Osteen was no longer available for deposition on July 19, but that he would be available on July 18. Aetna's counsel arranged to make that date work, and served Aetna's Amended Notice of Deposition for July 18 at 10:00 a.m. *See* Ex. 3-A (Amended Notice of Deposition of Shannon Osteen). There were no communications from Plaintiffs' counsel (or anyone acting on behalf of Mr. Helms) regarding who would be attending Mr. Osteen's deposition. Nor was there any indication of any potential conflict that may impede the deposition.

**D.      Plaintiffs Refused To Produce Mr. Osteen For His Deposition As Agreed**

On July 18, 2019, in accordance with the Amended Notice of Deposition, Aetna's counsel, Katherine Strahan, went to Thompson & Knight's offices to take the deposition of Shannon Osteen. Ex. 4 (Aff. of M. Katherine Strahan). When Ms. Strahan arrived at the conference room where the deposition was to occur, the court reporter and videographer were present, and an attorney named Michael Wynne was also present. The witness was not present in the conference room. *Id.*

Mr. Wynne originally identified himself to Ms. Strahan as representing Mr. Helms's "financial interests" and as a "bankruptcy creditor."  Mr. Wynne is a criminal attorney, and, apparently, Plaintiffs agreed to allow him to attend the deposition without notice to Aetna. Mr. Wynne's client--Mr. Helms--is not a party to this case, but he is a witness that

Aetna also seeks to depose.[9] Ms. Strahan advised Plaintiffs' counsel and Mr. Wynne that Aetna objected to Mr. Wynne's attendance at this deposition because Mr. Wynne did not represent any party or the witness (Mr. Osteen). Additionally, there is a protective order that governs most of the information produced by the parties.

In response, Mr. Wynne demanded that he either be allowed to attend or he (on behalf of Mr. Helms) would "shut down" the deposition. Ex. 4 (Aff. of M. Katherine Strahan) When Aetna continued to object, Mr. Wynne left the room, with threats that Mr. Helms would fire Plaintiffs' counsel (who had been hired by the Plaintiff Neil Gilmour, the Bankruptcy Trustee).

Meanwhile, Plaintiffs' counsel advised Ms. Strahan that they needed to confer with their client before confirming whether the deposition would go forward. Despite the fact that the deposition was set to begin at 10:00 a.m. CST, Ms. Strahan agreed to give Plaintiffs' counsel some time to confer before taking a certificate of non-appearance, in the event the deposition still could go forward. Ex. 4 (Aff. of M. Katherine Strahan). After several attempts to proceed, it was just before 11:30 a.m. when Plaintiffs' counsel advised that Plaintiffs would not present Mr. Osteen on that date.

At 11:31 a.m., the parties went on the record, whereby Plaintiffs' counsel stated that

---

[9]    After several attempts to schedule Mr. Helms's deposition for an agreed-up on date, Aetna noticed it for August 7, 2019. Under the current circumstances, Aetna also attempted to serve Mr. Helms with a subpoena under Rule 45 out of an abundance of caution. Mr. Helms attempted to evade personal service through his neighborhood security guards and through his "in-house" lawyer (Korri Bryant) at his place of business, who said the subpoena should be left with her. Helms's criminal attorney then filed a motion to quash the deposition in the Southern District of Texas, on purported grounds that Aetna needed to serve Mr. Helms with a subpoena under Rule 45 and that Aetna's notice of deposition under Rule 30 is insufficient. This motion is set for hearing on August 2. Such antics further demonstrate Mr. Helms's attempts to disrupt and delay Aetna's efforts to get to the truth of the matter here.

-7-

Plaintiffs were refusing to produce Shannon Osteen due to an unidentified "conflict in the bankruptcy estate." Ex. 3 (July 18, 2019 Certificate of Non-Appearance). Aetna reserved its right to move to compel and for sanctions for the refusal to produce the witness at the agreed date and time. *Id.*

**E.      Aetna Incurred Deposition Costs And Fees Due To Plaintiffs' Conduct**

In preparing to take the deposition as noticed, Aetna incurred court reporter and videographer expenses. Aetna also incurred legal fees for the time spent by Katherine Strahan in appearing for the deposition and waiting for a decision to be made by Plaintiffs about whether they would present the witness for deposition, despite their prior agreement to do so. Additionally, Aetna has incurred fees for the preparation of this motion.

**F.      Aetna Seeks Its Costs And Fees As Sanctions For Plaintiffs' Conduct**

Aetna seeks its costs and fees under Federal Rule of Civil Procedure 37(d)(1)(A), as sanctions for a party's failure to appear at a deposition. Here, this Court should enter sanctions against Plaintiffs for refusing to produce Mr. Osteen for deposition, as Plaintiffs had agreed to do. Alternatively, this Court has inherent power to issue sanctions in order to control the litigation before it. This Court should exercise that power here because Plaintiffs acted in bad faith in delaying Mr. Osteen's deposition, inviting non-parties to attend without notice, and ultimately in refusing to produce Mr. Osteen without a valid justification.

As a result, under either Rule 37 or the Court's inherent authority, Aetna requests that its motion for sanctions be granted and that this Court award Aetna reasonable costs for the previously-scheduled deposition, reasonable attorneys' fees incurred in preparing

-8-

for and attending the deposition, and the fees incurred in preparing this motion.

## III.    ARGUMENT AND AUTHORITIES

### A.    This Court Should Sanction Plaintiffs Under Rule 37(d)(1)(A)(i) For Refusing To Produce Mr. Osteen For Deposition As Previously Agreed

#### 1.    *The standard for sanctions under Rule 37(d)*

Under Federal Rule of Civil Procedure 37(d)(1)(A)(i), courts have broad discretion to order sanctions for discovery abuses, including if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition[.]" FED. R. CIV. P. 37(d)(1)(A)(i). While the type of awardable sanctions is flexible depending on the circumstances, "the court *must* require the party failing to act, his attorney, or both, to pay the reasonable expenses, including the payment of the other parties' attorneys' fees, unless the failure to act was 'substantially justified or other circumstances make an award of expenses unjust.'" *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 592 (S.D. Tex. 2011) (quoting FED. R. CIV. P. 37(d)(3)). Furthermore, courts may consider the circumstances surrounding the failure to appear, including, for example, whether reasonable notice was given in cancelling a deposition, or whether the cancelling party filed a motion for protective order. *See Rangel*, 274 F.R.D. at 592.

Here, Plaintiffs represented that they had control over Mr. Osteen, a former CFO, to present him for deposition. There was no notice of a potential conflict whatsoever, and there is no substantial justification for Plaintiffs' refusal to present Mr. Osteen.

011168.0268748 HOU 3955875v3

2.      *Sanctions are warranted against Plaintiffs*

In this case, Plaintiffs' refusal to produce Mr. Osteen was based only an unidentified "conflict," which apparently arose that morning following threats by Mr. Helms's personal (criminal) counsel. The Bankruptcy Trustee filed this case and is the representative of Plaintiffs. It is unclear how the Bankruptcy Trustee could allow Mr. Helms's personal attorney to usurp his powers; indeed, Mr. Helms had no right to "shut down" the deposition (even though, reasonable inferences can be made as to *why* Mr. Helms's criminal counsel wanted to be present for this testimony regarding Victory's operations). Regardless, the Bankruptcy Trustee filed this case and abused the discovery process by refusing to allow this material witness to testify as noticed.

Moreover, because Plaintiffs refused to produce Mr. Osteen an hour and a half after his deposition was scheduled to begin, the factor relating to the reasonableness of the notice weighs in favor of sanctions, as does Plaintiffs' failure to file a motion for protection if there were truly a conflict.[10] Thus, this Court should award sanctions against Plaintiffs under Rule 37 in the manner and in the amount described below.

**B.      Alternatively, This Court Should Exercise Its Inherent Authority To Issue Sanctions Against Plaintiffs For Failing To Produce Mr. Osteen**

Alternatively, this Court may exercise its inherent authority to issue sanctions for abuse of the discovery process. Given Plaintiffs' abuse of the discovery process by refusing

---

[10]   But even if it had filed for protection based on its "conflict," the refusal to produce Mr. Osteen would still weigh in favor of sanctions because "the mere act of filing a motion for a protective order does not relieve a party of the duty to appear; the party is obliged to appear until some order of the court excuses attendance." *Barnes v. Madison*, 79 F. App'x 691, 707 (5th Cir. 2003).

-10-

to produce Mr. Osteen as noticed and agreed, the Court should do so here.

Specifically, "[a] district court has the inherent authority to impose sanctions 'in order to control the litigation before it.'" *Gibraltar Cable Barrier Sys., LP v. Neusch,* 1:16-CV-418-LY-ML, 2017 WL 5202879, at *7 (W.D. Tex. Sept. 22, 2017) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 703 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). Furthermore, it is appropriate for a district court to rely on its inherent power to impose sanctions, even if the conduct is not effectively sanctionable pursuant to an existing rule or statute. *Carroll v. Jaques Admiralty Law Firm, P.C.,* 110 F.3d 290, 292 (5th Cir. 1997). Indeed, "[f]ederal courts have not hesitated to sanction conduct–such as the failure to answer deposition questions–that delays or disrupts the litigation of a case[]" and should not hesitate to do so here. *Id.* at *4, n.1 (citing *Carroll v. Jaques,* 926 F. Supp. 1282, 1288-89 (E.D. Tex. 1996), *aff'd,* 110 F.3d 290 (5th Cir. 1997)).

Here, based on the conduct described above, Plaintiffs acted in bad faith in refusing to produce Mr. Osteen at his deposition. As such, this Court should award sanctions in the manner requested. *See, e.g., Howell v. Standard Motor Prods., Inc.,* No. 4:99-cv-987-E, 2001 WL 456241 (N.D. Tex. Apr. 27, 2001) (sanctions imposed under court's inherent power where attorney refused to let deponent answer numerous questions during a deposition and ultimately suspended deposition).

## C.   Aetna Requests Sanctions In The Form Of Attorneys' Fees And Costs

At this time, and based on the foregoing, Aetna requests that this Court find that monetary sanctions against Plaintiffs are warranted in the form of an award to Aetna of:

-11-

(1) its reasonable costs associated with the previously-scheduled deposition; (2) its reasonable and necessary attorneys' fees associated with the deposition; and (3) its reasonable and necessary attorneys' fees incurred in preparing and presenting this motion. Aetna will present evidence of such fees and costs at the time and in the manner directed by the Court.

## IV.    RESERVATION OF ADDITIONAL RIGHTS

Per the local rules and procedures, as well as the Court's Advisory Concerning Discovery (ECF No. 17), Aetna will attempt to reschedule Mr. Osteen's deposition and will subpoena him if necessary, prior to moving to compel his appearance. Aetna further reserves the right to seek other appropriate sanctions as Plaintiffs' evasive, groundless and dilatory conduct continues, including, but not limited to, any interference with proceeding with any future depositions by Mr. Helms's personal attorneys.[11]

## V.    COMPLIANCE WITH LOCAL RULE CV-7(i)

On August 1, 2019, at 4:10 a.m. CST, counsel for Defendants attempted to confer with Plaintiffs' counsel concerning this Motion. Counsel for Plaintiffs advised at 3:36 p.m. that they would be unable to confer with their client until Monday, due to their client being unavailable. At the time of filing, Plaintiffs have not agreed to the relief requested herein.

---

[11] These sanctions may include: "(1) an order that matters or designated facts shall be taken as established for the purpose of the action; (2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters into evidence; (3) an order striking pleadings or parts of pleadings; (4) an order staying further proceedings pending compliance; (5) an order dismissing the action or proceeding in whole or in part; and (6) an order of default judgment against the offending party." *Bonner v. Metro. Sec. Servs., Inc.*, SA-10-CA-937-XR, 2012 WL 12919192, at *3 (W.D. Tex. Feb. 1, 2012) (quotations omitted).

011168.0268748 HOU 3955875v3

## VI.    CONCLUSION

Plaintiffs' conduct resulted in a waste of time and resources, and resulted in Aetna incurring unnecessary costs and attorneys' fees. Therefore, Aetna requests that the Court grant Aetna's motion for sanctions, and award Aetna its reasonable costs and attorneys' fees incurred as a result of Plaintiffs' refusal to produce Mr. Osteen for deposition. Aetna prays for the requested relief and all further relief to which it is justly entitled.

OF COUNSEL:
HUNTON ANDREWS KURTH LLP
    and
M. KATHERINE STRAHAN
Texas Bar No. 24013584
*kstrahan@huntonak.com*

Respectfully submitted,

By: */s/ John B. Shely*
JOHN B. SHELY
Texas Bar No. 18215300
HUNTON ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone:  (713) 220-4200
Facsimile:  (713) 220-4285
*jshely@huntonak.com*

ATTORNEY-IN-CHARGE FOR
DEFENDANTS AETNA HEALTH INC.,
AETNA HEALTH INSURANCE
COMPANY, AND AETNA LIFE
INSURANCE COMPANY

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), I hereby certify that on August 1, 2019, at 4:10 a.m. CST, counsel for Defendants attempted to confer with Plaintiffs' counsel concerning this Motion. Counsel for Plaintiffs advised at 3:36 p.m. that they would be unable to confer with their client until Monday, due to their client being unavailable. At the time of filing, Plaintiffs have not agreed to the relief requested herein.

*/s/ John B. Shely*
John B. Shely

011168.0268748 HOU 3955875v3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2019, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who are known "Filing Users:"

    Jennifer Rudenick Ecklund
    Andrew Cookingham
    Reed C. Randel

*/s/ John B. Shely*
John B. Shely

-14-

011168.0268748 HOU 3955875v3