IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NEIL GILMOUR, III, TRUSTEE FOR THE GRANTOR TRUSTS OF VICTORY PARENT COMPANY, LLC, VICTORY MEDICAL CENTER CRAIG RANCH, LP, VICTORY MEDICAL CENTER LANDMARK, LP, VICTORY MEDICAL CENTER MID-CITIES, LP, VICTORY MEDICAL CENTER PLANO, LP, VICTORY MEDICAL CENTER SOUTHCROSS, LP, VICTORY SURGICAL HOSPITAL EAST HOUSTON, LP, AND VICTORY MEDICAL CENTER BEAUMONT, LP, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | JURY DEMANDED |
| VS. | §<br>§ | CIVIL ACTION NO.<br>5:17-cv-00510-FB |
| AETNA HEALTH, INC., AETNA HEALTH INSURANCE COMPANY, AND AETNA LIFE INSURANCE COMPANY, | §<br>§<br>§<br>§<br>§ | |
| *Defendants*. | § | |

## THE TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS

Neil Gilmour, III, solely in his capacity as Trustee for the Grantor Trusts of Victory Parent

Company, LLC; Victory Medical Center Craig Ranch, LP; Victory Medical Center Landmark, LP;

Victory Medical Center Mid-Cities, LP; Victory Medical Center Plano, LP; Victory Medical

Center Southcross, LP; and Victory Medical Center Beaumont, LP; Victory Surgical Hospital East

Houston, LP (collectively, "Victory" or the "Trustee") files this Response to Defendants' Motion

for Sanctions (the "Motion")[1] and respectfully shows the Court as follows.

---

[1] Dkt. No 123, filed Dec. 2, 2019.

## I.      INTRODUCTION

Because it knows that it cannot actually prove its fraud case at trial, Aetna has moved this Court to adopt Aetna's view of the facts as a matter of law and throw out Victory's claims through its sanctioning powers.  Aetna makes this absurd request because it apparently believes the Trustee should have recognized the supposed rampant, but unproven fraud that took place at Victory and dismissed this lawsuit.  In short, Aetna argues that because the Trustee has not acquiesced to *Aetna's* view of the supposed facts and *Aetna's* legal theories, he should be sanctioned.

But the Fifth Circuit and two federal district courts have already rejected Aetna's legal theories.  And no fact finder has determined whether any fraud occurred *at Victory* at all, let alone been presented with Aetna's theory that Victory specifically defrauded Aetna.  Indeed, those are precisely the counterclaims that are being litigated in this very matter.  It is Aetna's burden to present evidence (assuming it had any) of a valid theory of the case (which also does not exist) to fact finders, who will ultimately determine whether the fraud alleged by Aetna did, in fact, occur. Aetna cannot avoid that burden by simply demanding that the Trustee acquiesce to Aetna's arguments or face sanctions.  Nor does Aetna get to substitute its theories for actual evidence or the findings of a jury.

Aetna knows it cannot actually establish its affirmative fraud claims as a matter of law, which is why it did not move for summary judgment on its own counterclaims.  In fact, as established by the briefing on Victory's Motion for Partial Summary Judgment,[2] Aetna cannot even establish a material fact issue with respect to the elements of its fraud claims.  Yet Aetna now implores this Court to use the extreme measure of sanctions to achieve what Aetna cannot as a matter of law obtain, and that it did not even attempt to obtain through the proper motion process.

---

[2] Dkt. No. 100, filed Nov. 6, 2019.  Victory's Motion is incorporated herein by reference.  *See* Fed. R. Civ. P. 10(c).

To put it mildly, Aetna's motion for sanctions is itself frivolous and sanctionable, and it seeks to subvert the judicial process in its entirety. The Court should decline Aetna's invitation to circumvent the fact-finding process, eliminate Aetna's burden of proof, and entirely remove the jury's role in this lawsuit. Aetna's motion should be denied in its entirety and the Trustee should be awarded the legal fees and costs incurred to defend against it.

## II.   SANCTIONS STANDARDS

Subsections (b)(1) and (b)(2) of Federal Rule of Civil Procedure 11 provide two limited grounds for sanctions, "either because a filing is made for an improper purpose regardless of its merits or because a filing, even made in good faith, is legally indefensible." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016); *see also Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796 (5th Cir. 2003) (en banc). The purpose of the rule is to "deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), and "to spare innocent parties and overburdened courts from the filing of frivolous lawsuits," *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987).

Conduct under Rule 11 is judged with an objective standard of reasonableness. *Whitehead*, 332 F.3d at 802, and is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the document." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992). A sanction under Rule 11 is "an extraordinary remedy, one to be exercised with extreme caution." *Laughlin v. Perot*, No. 3:95-cv-2577-R, 1997 WL 135676, at *8 (N.D. Tex. Mar. 12, 1997). "[A] trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where… the law is arguably unclear." *Snow Ingredients*, 833 F.3d at 528. This is so because "misapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in pursing novel factual or legal theories, contrary to the intent of

its framers." *Id*. at 529.  If sanctions are warranted under Rule 11, a court "must impose the least severe sanction." *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

Motions for sanctions themselves are subject to Rule 11's requirements and "should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.  Nor should Rule 11 motions be permitted to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable. . . . "  Fed. R. Civ. P. 11 (Advisory Committee Note to 1993 Amendments); *accord Akhikari v. Daoud & Partners*, No. 4:09–CV–1237, 2017 WL 5904782, at *3 (S.D. Tex. Nov. 30, 2017).

A district court also has the inherent authority "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," which includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017).  "In order to impose sanctions . . .  under its inherent power, a court must make a specific finding [of] bad faith." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995); *see also Matta v. May*, 188 F.3d 410, 416 (5th Cir. 1997) (noting that courts have inherent power to impose sanctions "when a party has acted in bad faith, vexatiously, wantonly, and for oppressive reasons" but "must make a specific finding that the sanctioned party acted in bad faith in order to impose such sanctions").  Further, this inherent power "ought to be exercised with great caution," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), and any sanctions ordered should be "the least severe sanctions adequate to accomplish the purpose for which the sanction was imposed." *Topalian v. Ehrman*, 3 F.3d 931,938 (5th Cir. 1993).

As explained in detail below, Aetna cannot meet either standard in this case.  There is no evidence of bad faith on the part of Victory or the Trustee, and Aetna does not (because it cannot)

even contend that the Trustee was not objectively reasonable to assert the claims he did when the pleadings were signed.  Further, the Trustees' claims do not represent a novel factual or legal theory—pursuing underpayment of healthcare claims is a valid and established cause of action. The only party in this case asserting legally and factually indefensible theories is Aetna, whose manufactured and meritless fraud schemes have already been rejected by the Fifth Circuit.

## III.    ARGUMENTS AND AUTHORITIES

For at least the third time in this litigation, Aetna again argues it should not have to pay Victory because a different hospital system, Forest Park Medical Center, was the subject of a criminal trial earlier in 2019.  Aetna's hyperbolic motions and rhetoric are based on two sentences uttered by an admitted liar in that trial, *in which neither Aetna nor Victory were a party*.  Andrew Hillman's testimony in the Forest Park case does not even connect what Aetna believes to be fraudulent conduct to Victory.  It simply describes *his* work and relationships with several surgeons.  And it confirms that Victory made every effort to assure that its agreements *did* comply with the law.  Aetna seeks to have this Court find criminal conduct by association without consideration of the evidence, and without Victory or the Trustee being able to cross-examine the "witness" they want to rely on.

Further, Texas Occupations Code Section 102.001, the supposed statutory basis for the "criminal enterprise" Aetna alleges, is a Texas provision describing a misdemeanor offense, the Trustee has found no reported case enforcing the statute, and Victory has certainly not been found to have violated it.[3]  Aetna's repeated attempts to avoid adjudication of its own failures to pay by

---

[3] At its core, Aetna's fraud claim is an improper attempt to turn a possible misdemeanor charge or False Claims Act case that the government might bring (but has not yet brought) against Victory into a private civil action.  But the standards of proof for those strict liability claims are markedly different from the standard Aetna must meet to establish common law fraud in the instant case.

**THE TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS—PAGE 5**

hurling accusations of crime and conspiracy are improper, irrelevant, and unfounded.  They are also insufficient to sustain the imposition of any sanctions against the Trustee for five independent reasons.

A. **The Fifth Circuit has previously rejected Aetna's exact theories of fraud and negligent misrepresentation.**

First, and most significantly, the Fifth Circuit has already heard Aetna's arguments about the fraudulent kick-back scheme and held the theory as incapable of establishing fraud.  In fact, Aetna itself put forward the very same theories of fraud and negligent misrepresentation in *North Cypress v. Aetna*, 898 F.3d 461 (5th Cir. 2018), where it was represented by the very same counsel as in the instant suit.[4]  To be clear, in the *North Cypress* litigation, the Southern District of Texas and the Fifth Circuit Court of Appeals considered the exact same theories of fraud and negligent misrepresentation presented by Aetna here, and held that the alleged criminal enterprise (comprised of supposed physician kickbacks) was irrelevant to whether the surgical hospital in that case misrepresented its billed charges.  Based on the Fifth Circuit's opinion alone, Aetna's Sanction Motion here is filed in bad faith.

More specifically, the Fifth Circuit found in *North Cypress* that, based on the investigations undertaken by Aetna's Special Investigations Unit—on similar grounds to the Aetna investigations in the instant case—Aetna could not have justifiably relied on the provider's billed charges when paying the claims.  *North Cypress*, 898 F.3d at 475.  The existence of a supposed kickback scheme in *North Cypress* had no impact on that legal issue, just as it has no impact on the legal issue of justifiable reliance here.

---

[4] The *North Cypress v. Aetna* opinion is attached to this response as Exhibit A because almost the entire opinion speaks to why the scheme alleged by Aetna in the instant case fails as a matter of law and because Aetna's counsel has neglected to bring it to the Court's attention.

It is harassing and disingenuous for Aetna to file a frivolous motion for sanctions with the knowledge that its fraud theory has already been specifically rejected by the relevant court of appeals and that Aetna cannot—as a matter of law—establish justifiable reliance. Nonetheless, Aetna persists in its consistent and abusive tactics, trying to avoid paying benefits by accusing healthcare providers of operating a "massive criminal enterprise," hoping that this Court might ignore the law and facts and buy into its constant refrains of distraction.

Counsel for Aetna has also unsuccessfully employed this very sanctions motion strategy before while representing a different insurer. *See Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC,* 878 F.3d 478, 487-88 (5th Cir. 2017). The Southern District of Texas rejected that effort, and confirmed (again) that the very same alleged fraud scheme—arguing that supposed physician kickbacks constituted billing fraud to Cigna through "inflated charges"—was insufficient to sustain Aetna's fraud claim. *Id*.

Thus, despite being fully aware that its fraud theory is fallacious, that defending against that fraud theory is not sanctionable, and that, even after full evidentiary consideration, it is unlikely to be sustained—Aetna suggests to this Court that the conduct it alleges is so clearly fraudulent that the Court should strike the Trustee's claims in their entirety. It is absurd to suggest that maintaining a legal position that has been previously vindicated by multiple federal district courts and the Fifth Circuit is improper, let alone sanctionable. Instead, the Court should award the Trustee the costs of defending this motion pursuant to Rule 11's authority. *See Gaiardo v. Ethyl Corp*., 835 F.2d 479, 485 (3d Cir. 1987) ("The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite

retribution from courts which are far from enchanted with such abusive conduct. A court may impose sanctions on its own initiative when the rule is invoked for an improper purpose.").

**B.   The summary judgment record precludes Defendants' request for sanctions.**

Second, and as the Court knows, the Trustee filed his own motion for summary judgment on Aetna's fraud claims because, among other things, (1) Aetna cannot establish any misrepresentation made by Victory to it; (2) Aetna cannot establish actual or justifiable reliance on any such misrepresentation; and (3) Aetna cannot demonstrate any recoverable damages.[5] In Response to the Trustee's Motion, Defendants make the same fallacious arguments they put forward here; namely, that the unproven "vast criminal conspiracy" alleged by Aetna excuses its own failure to pay the claims submitted.

Aetna is wrong as a matter of fact and law, as explained by the Trustee in his Reply Brief[6] and by the Fifth Circuit last year. *North Cypress*, 898 F.3d at 475. More significantly for the instant question, this Court's decisions on the pending summary judgment motions are likely to moot Aetna's Motion for Sanctions, because the "evidence" referenced by Aetna is identical and Aetna's theories are the same. This is true regardless of the outcome of the summary judgment motions themselves. If the Court determines that the Trustee is entitled to summary judgment on Aetna's fraud claim as a matter of law, then there is no fraud—for purposes of Aetna's requested offset or for purposes of sanctions. If, instead, the Court determines that Aetna has presented sufficient evidence to raise issues of material fact on at least one element of Aetna's fraud claims,

---

[5] Out of an abundance of caution, so that the entire summary judgment record is before the Court, the Trustee has filed the Appendix in Support of Victory's Motion for Partial Summary Judgment [Dkt. No. 92-3 through 92-6, filed Oct. 29, 2019] [APP.] as Exhibit B to this Response, and the Appendix in Support of Victory's Response to Aetna's Motion for Summary Judgment [Dkt. No. 112-2 through 112-8] [Response APP.] as Exhibit C to this Response.

[6] Dkt. No. 140, filed Dec. 16, 2019, incorporated herein by reference. *See* Fed. R. Civ. P. 10(c).

**THE TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS—PAGE 8**

then the claim must be put before the jury for resolution of those fact issues.  The existence of fact issues requiring jury determination would also preclude the basis of Aetna's Motion.

In fact, Aetna's filing of a sanctions motion that is merely duplicative of other briefing is itself improper under Rule 11.  *See Akhikari*, 2017 WL 5904782 at *9 (S.D. Tex. Nov. 30, 2017) ("Defendants' sanction motion was entirely meritless.  Defendants reiterated the same alleged factual deficiencies in Plaintiffs' case that were central to Defendants' summary judgment motion, which was then pending.  Simply waiting for the resolution of their summary judgment motion would have mooted much of their Rule 11 motion.  Because Defendants did not wait, the length and complexity of their motion placed an onerous burden on Plaintiffs at a time when the intensity of the litigation was at its peak.");  *see also Rich v. Taser Intern., Inc*., No. 2:09–cv–02450–ECR–RJJ, 2012 WL 3155137, at *3  (D. Nev. Aug. 2, 2012) (denying defendant's sanction motion as "completely without merit," awarding fees to plaintiff, and noting that the motion for sanctions "is composed almost entirely of arguments . . . that have already been made in TASER's Motion for Summary Judgment and Motion in Limine. . . . A Rule 11 Motion is not a proper vehicle for arguing the merits of a case or refuting the testimony of an expert witness—other motions are available for those purposes.").

Aetna also remarkably claims that Victory's summary judgment motion itself is sanctionable, apparently because Aetna believes its fraud theory is simply unassailable (despite losing on this theory more than once).  Of course, Aetna did not file its own motion for summary judgment on its affirmative fraud claim, presumably because even Aetna knows that it cannot affirmatively establish every element of that claim as a matter of law on this evidentiary record.

Yet, Aetna claims here that the Trustee must abandon his own claims in the face of the same evidentiary record that is insufficient to establish Aetna's right to legal relief.[7]

### C.      Aetna has no competent or credible evidence to support its fraud claim.

Third, Aetna has no actual evidence to support its fraud claim, let alone establish it so convincingly that an opposing party should be sanctioned for presenting an opposing view. Calling Victory a criminal enterprise does not make it so, no matter how many times Aetna makes the accusation.[8]   As this Court has already seen on several occasions, Aetna attempts to equate a supposed state anti-kickback violation with fraud on a private insurance company, despite knowing there is no private cause of action under that statute, and that the only party permitted to enforce it is the State.  Further, Aetna ignores the significant surgical services that were actually provided to thousands of Aetna's members, in an attempt to divert the Court's attention from Aetna's obligations to pay for them.  Aetna also wholly ignores extensive and nearly undisputed evidence that each claim submitted by Victory was based on services actually provided to an Aetna insured, Victory's claim forms reflected the services performed and associated charges, and Aetna even undertook an investigation related to an allegation of overcharging by Victory[9]—after which Aetna continued paying Victory and even thereafter entered into network contracts with Victory hospitals.[10]

---

[7] Affirmative fraud claims generally cannot be adjudicated as a matter of law because the elements of fraud—which all must be affirmatively proven by the party asserting the claim—include multiple fact issues that are reserved for the jury.  A party defending against a fraud claim may obtain summary judgment in its favor if it can conclusively negate any element of the fraud claim as a matter of law.  The difference in the availability of summary judgment relief is the result of the different burdens imposed on the relative parties, of course.  A party putting forward an affirmative claim, of fraud or anything else, has the burden to establish every element of that claim through competent and admissible evidence.  A party defending against a claim need only negate a single element to be entitled to relief.

[8] Victory disputes that its business practices ran afoul of the law at all and as Victory has explained in other briefing, the alleged fraudulent conduct has no relevance in this lawsuit.

[9] Aetna's Response to Victory's Motion for Partial Summary Judgment [Dkt. No. 113, filed Nov. 22, 2019] ("Aetna's Summary Judgment Response"), pp. 20-21.

[10] Victory's Motion for Summary Judgment, 10; Exs. B-21 through B-25, Hospital Services Agreements [APP. 0264-0491]; Ex. B-20, Kiefer Deposition at 91:14-92:5 [APP. 0258.3-0258.4].

Despite all of these facts that indicate Victory did not defraud Aetna, Aetna blithely accuses the Trustee himself of fraud, based solely on his failure to see the case Aetna's way. But Aetna is not the sole arbiter of the facts or the ultimate issues in this case; the jury is. No jury or other fact finder has ever determined that Victory committed any kind of fraud, let alone fraud against Aetna. The Trustee has every right to demand that Aetna actually prove its case and every right to put forward his own arguments about why Aetna cannot do so, particularly when the Fifth Circuit has already explained why Aetna's claims must fail. Victory will not revisit the evidentiary record in full here, but it is worth noting at least some of the settled law and evidence that supports the Trustee's assessment that there was no actual fraud against Aetna and that Aetna cannot prove otherwise.

### 1.   Aetna paid claims based on its own methodologies and analysis.

Aetna does not establish that amounts charged to it were influenced by the supposed violations of kickback statutes. It does not establish that those amounts were improper, or that they were excessive. During its investigation, Aetna's determination of the reasonable charge for some of Victory's larger charges was actually less than what Victory billed.[11]   Likewise, Aetna fails to apprise this Court that only a handful of the health plans at issue in this lawsuit even take a provider's billed amount into consideration when determining what the reasonable and customary charge is. More commonly, Aetna unilaterally determines what amount is a "reasonable and customary charge" by referencing other charges in the area, contracted rates, Medicare rates, or some multiples of same. This reality obviates any possibility of reliance on a billed charge that was supposedly inflated by other business practices of a provider, and thus precludes a claim of

---

[11] Ex. B-31, July 11, 2014 email from B. O'Brien; [APP. 0530]; Ex. B-20 Kiefer Dep. at 82:19-83:22 [APP. 0258.1-258.2].

fraud.  *See North Cypress*, 898 F.3d at 476-77.  And finally, there is evidence that Aetna actually underpaid the claims at issue.[12]

<strong>2.</strong>   <strong><u>Aetna has not—and cannot—establish that Victory violated the Texas Patient Solicitation Act</u></strong><strong>.</strong>

Assuming arguendo that the Texas Patient Solicitation Act could form the basis for a colorable fraud claim by a private insurer (it does not), Aetna ignores the inconvenient fact that the conduct alleged by Aetna is permissible under that statute.  As stated in Texas Occupations Code Section 102.004, the provisions prohibiting remuneration for referrals do not apply to advertising.  As the evidence cited by Aetna itself establishes, the only payments at issue from Victory are payments related to co-marketing (advertising) agreements between the hospitals and marketing companies on behalf of certain surgeons.[13]

Aetna identifies no payments that are actually covered by the prohibitions of the statute. Likewise, Aetna complains about payments made to companies that handled marketing—not because those payments were improper, but because the principal of one such company agreed to plead guilty in a separate lawsuit for his conduct with relation to a different hospital system. Andrew Hillman's conduct has not been connected by Aetna in any demonstrable way to conduct by Victory, and it certainly has not been connected to the Trustee.  Furthermore, as discussed below, the Trustee has shown at great length that Hillman's testimony is not admissible under the Federal Rules of Evidence.[14]

---

[12] Victory's Response to Aetna's Motion for Summary Judgment [Dkt. No. 110, filed Nov. 22, 2019] (incorporated herein by reference, *see* Fed. R. Civ. P. 10(c)), pp. 12-14; Ex. C-J, Rodney Sowards Deposition, 75:13-76:2; 76:-77:5 [Response APP. 0360-61]; and Ex. C-O, Sowards Report.

[13] Aetna's Response to Victory's Motion for Summary Judgment [Dkt. No. 113, filed Nov. 22, 2019] pp. 10-12.

[14] Trustee's Response to Defendants' Opposed Motion to Admit Testimony of Non-Party Andrew Hillman and/or for an Adverse Inference [Dkt. No. 102, filed Nov. 14, 2019], which is incorporated herein by reference.  *See* Fed. R. Civ. P. 10(c).

3.      **Victory specifically sought and received advice from counsel to comply with the law.**

Aetna, of course, also wholly ignores the substantial evidence and testimony that demonstrates that Victory and its principals consulted its healthcare attorneys at virtually every turn to ensure compliance with the relevant laws.[15]  Aetna instead baldly asserts that the employees of Victory must have been willing co-conspirators in a massive criminal attempt to defraud the entire insurance industry, including attributing certain employees' inability to remember events and discussions from six to ten years earlier to evidence of their malfeasance.  These characterizations are not evidence at all; they are positions taken by counsel.  Regardless, determinations as to the impact and import of evidence must be made by a factfinder at trial,[16] and are an improper basis upon which to award sanctions.  When presented with the evidence, the jury will have the opportunity to hear and see that Victory made consistent and routine attempts to ensure their operations and agreements were in compliance with the law.[17]

4.      **Hillman's testimony is inherently suspect and inadmissible in this case.**

The entirety of Aetna's fraud argument is premised upon a couple of sentences of testimony at the Forest Park Medical Center trial, at which Andrew Hillman, testifying for the government in support of a plea deal, claimed to have undertaken similar improper conduct when working with Victory.  The testimony itself is bizarre, and offered in response to questioning by the Assistant U.S. Attorney about Victory—which had no relevance whatsoever to the Forest Park trial.  The Trustee has tried to obtain communications between Aetna and the government in order to

---

[15] Ex. B-5, Deposition excerpts of Tanya Snodgrass, 61:19-25; 112:24-113:10; 115:21-116:11; 152:3-152:25; 173:16-174:4; 179:3-8; 243:8-18; and 274:21-275:12 [APP. .

[16] *See La  Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 480 (5th Cir. 2002) (noting that factfinders consider the weight of the evidence).

[17] Snodgrass Deposition at 61:19-25; 115:21-116:11; 152:3-152:25; 173:16-174:4; 179:3-8; 243:8-18; and 274:21-275:12 [APP. 0085-96].

**THE TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS—PAGE 13**

understand the extent—if any—of Aetna's requests of, and coordination with, the government with regard to attempts to get Hillman to implicate Victory.   Aetna has refused to produce the communications.[18]   Moreover, even its Motion for Sanctions notes in a subheading that "Aetna obtained relevant testimony from the Forest Park trial"—also a bizarre assertion suggesting Aetna has actively been trying to bootstrap its claims and defenses (and further intimidate Victory) by working with federal prosecutors.   Aetna has now undeniably made its own conduct an issue by attempting to transform Hillman's limited and untested testimony in a completely different case into "unassailable proof" that Victory and the Trustee embody multiple criminal conspiracies and thus should be denied access to the Court entirely.[19]

### D. The Bankruptcy Court approved the trust structure and the Trustee is properly pursuing undischarged claims.

Fourth, after first ignoring its own evidentiary burdens and asserting that Aetna alone can determine if it has prevailed on it counterclaims, Aetna goes even further—arguing that the Trustee himself is perpetuating a constructive fraud by continuing to pursue the affirmative claims he, as Trustee, is charged to pursue.   Aetna therefore insists that this Court should sanction the Trustee in order to avoid the "unfair" potential result of Aetna having to pay an award of damages because the proceeds would inure to creditors Aetna accuses of fraud.   These assertions are patently ridiculous.

The trust structure and the role of the Trustee was considered and specifically approved by a federal bankruptcy judge.[20]   Aetna has no standing to complain about that structure here, or about

---

[18] Ex. D, Defendants' September 18, 2019 Objections and Responses to Victory's Third Requests for Production.

[19] The Trustee is filing a Motion to Compel, contemporaneously herewith.

[20] "Findings of Fact and Conclusions of Law and Order Confirming First Amended Joint Plan of Reorganization" (the "Confirmation Order"), Ex. F, Dkt. No. 969, *In re Victory Medical Center Mid-Cities, LP, et al.*, Case No. 15-42373-rfn (Bankr. N.D. Tex. 2016) (the "Bankruptcy Case"), pp. 27 (appointing Neil Gilmour III as Grantor Trustee under the Joint Plan).   The Plan provided the Grantor Trustee the power to "prosecute, after consultation with HPRH

what should or will be done with any recovery of funds pursuant to this lawsuit.[21]  Moreover, for the Trustee to prevail in this lawsuit and for any funds recovered to flow to creditors—whoever they are—the Trustee must establish to a jury, and have the jury agree, that Aetna had an obligation to pay more than what it paid for the services rendered by Victory.  In that circumstance, the jury will necessarily have considered and rejected Aetna's arguments for why it should not have to pay. What Aetna is actually trying to avoid is having anyone other than Aetna itself determine whether Aetna failed to pay the claims at issue appropriately.

None of Aetna's accusations changes the essential facts known to the Trustee, both when he filed the case and now, which are: (1) Aetna is obligated to pay for out-of-network medical services provided to its members, usually at the "usual and customary rate;" (2) Aetna unilaterally sets that rate regardless of what a provider charges for its services in most circumstances; and (3) Aetna did not pay according to its obligations.  The Trustee is pursuing the accounts receivable that he was charged with pursuing after extensive diligence was performed.  The Trustee and Torch Recovery Services also pursued collection on these accounts for nearly a year before filing suit.[22]

On June 22, 2015 the US Trustee formed the Official Committee of Unsecured Creditors (the "Committee") in the bankruptcy.[23]  The Committee was represented by lawyers, and PriceWaterhouse Coopers ("PWC") served as financial advisor to the Committee.[24]  Throughout the initial bankruptcy proceedings, the Committee was regularly heard and appeared throughout the proceedings.[25]  PWC was involved in this process until it submitted its final invoice on May

---

Investments, and/compromise the Reserved Litigation claims, in its sole discretion."  Ex. A to the Confirmation Order, ¶ 6.17.3.

[21] Indeed, Aetna appeared in the Bankruptcy Case and received notices.  *See* Dkt. No. 222 in the Bankruptcy case.

[22] Ex. E, Deposition of Neil Gilmour, III, at 85:17-86:7.

[23] Ex. G, Dkt. No. 777 in the Bankruptcy Case, p. 19.

[24] Ex. G, Dkt. No 777 in the Bankruptcy Case, p. 19.

[25] Ex. G, Dkt. No 777 in the Bankruptcy Case, p. 19.

**THE TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS—PAGE 15**

18, 2016.[26]  As part of its efforts, among other things, PWC "[p]erformed a review of the Debtors'

books and records and other investigations that may be undertaken with respect to pre-petition

acts, related party transactions, financial condition of the Debtors, its management, creditors,

including the operation of their business…"[27]  Additionally, PWC performed an "analysis of any

accounts receivable that [were] not sold as part of the auction process, including the advice and

assistance with the collection efforts of such receivables."[28]  Armed with the information provided

by its advisors, the Committee negotiated the Collection Agreement under the Plan at arms'

length.[29]  The Plan also formed a Plan Advisory Board, consisting of Committee members, whose

purpose is to "monitor and oversee the Trustee."[30]

Additionally, the Disclosure Statement, signed by Patrick Magill, the Debtors' Chief

Restructuring Officer, provided a liquidation analysis, which established significant potential

recovery against health insurers, including Aetna.[31]  Furthermore, the Plan provided that it was

"the result of a determination that the most effective method to maximize the recovery of all

creditors was the collection of Receivables by Collection Agent, utilizing current employees and

records, and authorizing the Grantor Trustee to pursue Reserved Litigation Claims."[32]  The Trustee

did not simply file his lawsuit against Aetna without conducting a sufficient investigation.  Instead,

he relied on the information provided by professionals who were charged with looking into the

potential recovery against health insurers like Aetna in addition to Victory's conduct with respect

to much of the allegations Aetna now raises.  Further, the Trustee cannot be held accountable for

---

[26] Ex. H, Dkt. No. 1096 in the Bankruptcy Case.
[27] Ex. H, Dkt. No. 1096 in the Bankruptcy Case, p. 7.
[28] Ex. H, Dkt. No. 1096 in the Bankruptcy Case, p. 8.
[29] Ex. G, Dkt. No. 777 in the Bankruptcy Case, p. 22.
[30] Ex. F, Dkt. No. 969 in the Bankruptcy Case, Ex. A., ¶ 2.1.79.
[31] Ex. G, Dkt. No. 777 in the Bankruptcy Case, p. 40-41.
[32] Ex. G, Dkt. No. 777 in the Bankruptcy Case, p. 22.

**THE TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS—PAGE 16**

not discovering "fraudulent" conduct that the Fifth Circuit has held does not constitute fraud.  *See North Cypress*, 898 F.3d at 475-77.

### E.      Mr. Helms is not a party to this lawsuit and does not control the Trustee.

Finally, Aetna complains that Robert Helms has inserted himself and his lawyers into the case in furtherance of the alleged fraud and claims that Mr. Helms must be directing the supposed ongoing fraud, with the assistance of the Trustee.  Of course, Aetna offers no actual evidence of any of these allegations.

The Trustee will not pretend to know what is in the mind of either Aetna or Mr. Helms, but it is abundantly clear that Aetna is accusing Mr. Helms specifically of masterminding a "wide[] criminal enterprise."[33]  It likewise appears that Aetna has been in contact with the federal government regarding its accusations and theory in an attempt to leverage its position in this litigation.[34]  It is therefore understandable that Mr. Helms might be concerned for his interests and seek to have representation to protect himself in the face of Aetna's accusations.  Likewise, Aetna refers in its hyperbole to former Victory employees as "criminal co-conspirators," so it is clear why those witnesses may have desired to have counsel present.  Aetna, however, ignores that *its* accusations and conduct are the precursor for the conduct by Mr. Helms and his lawyers that Aetna now complains of.  Regardless, the Trustee is independent by design, that design was specifically approved by the Bankruptcy Court, and the Trustee has his own independent counsel in this lawsuit.  The Trustee is not controlled by—nor can he control—Mr. Helms or his lawyers.

---

[33] Motion, p. 1.

[34] The Trustee's counsel previously conferred in September 2019 regarding a potential motion to compel Aetna's communications with the government and was not provided assurances that such communications did not exist.

**THE TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS—PAGE 17**

IV.     **CONCLUSION**

Aetna seeks sanctions on the basis of a fraud theory that has already been rejected by the Fifth Circuit.  Likewise, Aetna attempts to paint both the Trustee and Victory as bad actors in an effort to intimidate and harass them into dropping valid claims for underpayment.  Rather than file a motion for summary judgment—which would be the appropriate vehicle to attempt to conclusively prove its fraud claim, along with the evidence that both sides would present—Aetna asks the Court for death penalty sanctions and payment of all of its legal fees.

But the Trustee's refusal to accept Aetna's view of the facts and law is not only valid, it is supported by other recent cases in which Aetna has alleged the same facts constitute the same fraud scheme and lost.  Given that record, it is not at all clear that the Motion for Sanctions was filed in good faith.  What is clear is that Aetna cannot demonstrate either that the Trustee was operating in bad faith or that he was not objectively reasonable when the claims were filed.  Indeed, the Trustee persists with the claims because he believes, based on the analyses done in the bankruptcy and after his appointment, that Aetna underpaid the claims at issue.  Nothing in Aetna's vitriol changes those facts.

Aetna's Motion should be denied, and the Trustee should be awarded the fees and costs associated with responding to it.  As the Advisory Committee noted with regard to Rule 11 when it was amended in 1993:

> Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

Aetna's Motion is meritless, duplicative of its other briefing, and filed solely to intimidate the Trustee with baseless accusations of criminal conduct.  The relevant law supports the Trustee's positions in this case, which Aetna should know as a party to the controlling Fifth Circuit case, in which it was represented by the same counsel.  Based on the foregoing, the Trustee respectfully requests that the Court deny Aetna's Motion and order Aetna to pay the attorneys' fees and costs associated with responding to Aetna's Motion.  The Trustee further requests general relief.

Dated: December 23, 2019

Respectfully submitted,

THOMPSON & KNIGHT LLP

By: _____ /s/ Jennifer Rudenick Ecklund_
     Jennifer Rudenick Ecklund
     State Bar No. 24045626
     Jennifer.Ecklund@tklaw.com

     Andrew Cookingham
     State Bar No. 24065077
     Andrew.Cookingham@tklaw.com

     Reed C. Randel
     State Bar No. 24075780
     Reed.Randel@tklaw.com

     One Arts Plaza
     1722 Routh Street, Suite 1500
     Dallas, Texas 75201
     (214) 969-1700
     FAX (214) 969-1751

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2019, I electronically filed the foregoing document upon counsel of record, using the CM/ECF system.

/s/ *Reed C. Randel*_____
     Reed C. Randel