IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NEIL GILMOUR, III, TRUSTEE FOR THE GRANTOR TRUSTS OF VICTORY PARENT COMPANY, LLC, VICTORY MEDICAL CENTER CRAIG RANCH, LP, VICTORY MEDICAL CENTER LANDMARK, LP, VICTORY MEDICAL CENTER MID-CITIES, LP, VICTORY MEDICAL CENTER PLANO, LP, VICTORY MEDICAL CENTER SOUTHCROSS, LP, VICTORY SURGICAL HOSPITAL EAST HOUSTON, LP, AND VICTORY MEDICAL CENTER BEAUMONT, LP,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA HEALTH INC., AETNA HEALTH INSURANCE COMPANY, AND AETNA LIFE INSURANCE COMPANY,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § §    CIVIL ACTION NO. 5:17-CV-00510-FB |

**DEFENDANTS' SURREPLY BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

OF COUNSEL:
HUNTON ANDREWS KURTH LLP
    and
M. KATHERINE STRAHAN
State Bar No. 24013584
*kstrahan@huntonak.com*
ALLISON A. SJOBERG
State Bar No. 24089622
*asjoberg@huntonak.com*

JOHN B. SHELY
State Bar No. 18215300
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4105
Telecopier: (713) 220-4285
*jshely@huntonak.com*

ATTORNEY-IN-CHARGE FOR DEFENDANTS
AETNA HEALTH INC., AETNA HEALTH
INSURANCE COMPANY, AND AETNA LIFE
INSURANCE COMPANY

HOU 3964762v1

Pursuant to United States District Judge Fred Biery's Fact Sheet, Civil Cases, No. 32, Aetna files this surreply in opposition to Plaintiff's motion for partial summary judgment to address incorrect assertions in Plaintiff's reply brief in support of his motion.

## I. SURREPLY POINTS

**A.  The Record Is Replete With Evidence Of, *Inter Alia*, False Claim Submissions**

In Section IV.A. of the reply, Plaintiff argues that there is no evidence that Victory made material misrepresentations because Aetna has not shown that Victory's marketing agreements were illegal or that those illicit costs were passed on to Aetna. Aetna has, at a minimum, shown a fact issue on whether Victory was providing remuneration for referrals in violation of Texas law,[1] which was ultimately charged to Aetna.[2] Regardless, Plaintiff completely ignores all of the other evidence of false charges and claim submissions.

Incredibly, Plaintiff continues to ignore—like an ostrich with its head in the sand—the conclusions of four independent medical experts (including one medical billing expert) who found patterns of false and excessive billed charges:

- o  Affidavit of William Granberry, M.D. (Board-certified orthopedic surgeon) describing, *inter alia*, (i) charges for implants and operating room time not used; (ii) excessive charges for implants, including charges far exceeding typical acquisition costs; and (iii) overall excessive charges.[3]

---

[1] *See* Aetna's Resp. (DKT #111 [SEALED]), at pp. 35-37 & record references (including evidence leading to the reasonable inference that physicians were financially incentivized to refer patients to Victory's facilities due to Victory's payments to physician-affiliated companies).

[2] *See* Aetna's Resp., at p. 14 and record references (corporate representative testimony that all of Victory's costs were included in its cost-to-charge ratio); at pp. 18-19 (explaining how Victory's billed charges and cost-to-charge ratio factored into certain plan methodologies). Nor does the Fifth Circuit's *Humble* opinion cited in n. 12 of Plaintiff's reply reject the legal theory that billed charges were inflated to cover a kickback *per se*, as opposed a review of an evidentiary ruling under the abuse of discretion standard based on the facts of that case.

[3] Aetna's App. (DKT #111 [SEALED]), Ex. 40 & Ex. 40-1 (referenced medical records).

- o Affidavit of Samir Awad, M.D. (Board-certified general surgeon) describing evidence of, *inter alia,* (i) Victory charging for hiatal hernia procedures that were not performed based on the medical records; and (ii) Victory attempting to create an impression that the patient presented for treatment of a hiatal hernia instead of the non-covered bariatric procedure actually performed.[4]

- o Affidavit of Robert E. Jackson, M.D. (Board-certified internal medicine) describing, *inter alia*, patterns of (i) unwarranted surgeries; and (ii) excessive billed charges, as well as (iii) some billed services not being performed.[5]

- o Affidavit of Georgeann Edford, R.N., B.S., M.B.A., CCS-P, describing, *inter alia*, (i) false or misleading billing codes used in medical-claim submissions to Aetna, including inappropriate diagnosis codes (to hide non-covered bariatric procedures) and incorrect occurrence codes (to hide non-covered workers' compensation claims); (ii) over-reporting services, such as implants, operating room and anesthesia time; and (iii) excessive charges.[6]

And this is in addition to the other fraudulent conduct, including, but not limited to, waiver of patient financial responsibility, resulting in false billed charges on the medical claims.[7]

## B. Plaintiff Also Ignores Aetna's Evidence Of Justifiable Reliance

On reliance, Plaintiff ignores all of the evidence that Aetna reasonably relied upon Victory's claim submissions (and the presumption of honest billing) in paying Victory's claims for charges that (Aetna knows now) were not covered.[8] Moreover, that evidence defeats Plaintiff's summary judgment motion under the case law. *See* Response, pp. 31-34. Plaintiff's

---

[4] Aetna's App., Ex. 41 at ¶¶ 6-19; Ex. 41-2 (referenced records).

[5] Aetna's App., Ex. 27 at ¶ 6; Ex. 27-2 (referenced records).

[6] Aetna's App., Ex. 26 & referenced attachments at Ex. 26-1 through Ex. 26-4, filed at DKT #115 (corrected attachments to Ex. 26).

[7] *See* Aetna's App., Ex. 7 (Affidavit of Kevin Cornish); Ex. 7-1, pp. 10-13 (explaining industry standards, including Texas regulations, regarding the expectation that healthcare providers will collect patient responsibility).

[8] *See* Aetna's Resp., p. 31; Aetna's App., Ex. 28 at ¶¶ 21-23; Ex. 26, at ¶¶ 6-8 (affidavits explaining reliance on providers' medical claim submissions); Ex. 31, at ¶¶ 22-25 (explaining what records Aetna had the ability to review while Victory's claims were flagged by SIU).

Reply focuses on whether Aetna relied on the ***amount*** of Victory's billed charges (apparently assuming the charges were otherwise covered and billed to the member), alleging that "the plans contained payment methodologies that have nothing to do with Victory's actual billed charges." Reply, p. 7. That is simply not true.

As explained in the Affidavit of Billie Shuler, Victory's billed charges were used in a formula to derive the reasonable charge rate for certain plans at certain points in time.[9] In his own Motion, in fact, Plaintiff points to an example of a claim being discussed by Aetna, wherein Aetna described application of this formula and payment of Victory's claim based on a function of its billed charges.[10] Thus, Plaintiff's contentions are demonstrably false.

Plaintiff also misreads the evidence regarding the focus of the SIU investigation to try to negate justifiable reliance. The Affidavit of Mari Ellen Kiefer explains the SIU process and that Aetna was not specifically investigating allegations of fee-forgiveness or false claims (i.e., "services ***not rendered***").[11] Additionally, Plaintiff disregards the fact that many of the medical claims at issue in Aetna's counterclaim predate the SIU flag in August 2013. In short, Aetna is entitled to presume honest billing by providers, and Plaintiff cannot blame Aetna in this respect, especially when Victory went to great lengths to hide the truth.

C.  **Intent Is A Fact Issue And Reasonable Inferences Preclude Summary Judgment**

Regarding intent, Victory argues that Aetna makes only conclusory allegations that

---

[9] Aetna App., Ex. 28 at ¶ 9.

[10] Ex. 31 to Plaintiff's Motion. "Eligible billed charges" are the billed charges remaining after CorVel removed certain charges for non-covered services. Aetna App., Ex. 28 at ¶ 24.

[11] Aetna's App., Ex. 31 at ¶¶ 23-24. *Compare* Ex. 31, ¶ 9, cited by Plaintiff, which is discussing different allegations for the initial SIU referral.

3

Victory knowingly submitted false charges. To the contrary, the following evidences Victory's intent to defraud Aetna, which the Fifth Circuit has said is a fact issue anyway:[12]

- Affidavit of Georgeann Edford evidencing that a "trained" medical billing coder would have known Victory's medical claim submissions were false;[13] Plaintiff admits that Victory used its own medical coders and auditors.

- Affidavit of Georgeann Edford describing documentation in Victory's own files that its charges were 4 times those of similar facilities.[14]

- Affidavits of Georgeann Edford and Samir Awad, M.D., describing evidence of manipulating records (including operative reports) to create an impression that bariatric patients were seeking treatment for hiatal hernias.[15]

- Emails wherein Victory's CEO personally agreed to pay physicians' implant and marketing vendors for referral of cases to Victory and acknowledging their greed resulted in inflated (technically, "gouging") charges to the health plans.[16]

- Documentation that Victory told Aetna it was lowering its chargemaster, then raising it again without telling Aetna because it would raise "red flags."[17]

- Records showing hospital CEOs approved waiver of patient charges.[18]

With no answer for any of this evidence, Victory narrowly replies that it provided implant invoices to Aetna. But in discussions, Victory did ***not*** tell Aetna that L2 Surgical and

---

[12] *Lyxell v. Vautrin*, 604 F.2d 18, 20 (5th Cir. 1979) ("Cases in which the underlying issue is one of motivation, intent, or some other objective fact are particularly inappropriate for summary judgment."). *See also Romero v. Wyeth LLC*, No. 1:03-CV-1367, 2012 WL 12547105, at *11 (E.D. Tex. May 30, 2012) (citing *Pasco v. Knoblauch*, 223 F. App'x 319, 322 (5th Cir. 2007)).

[13] Aetna App., Ex. 26.

[14] Aetna App., Ex. 26.

[15] Aetna App., Ex. 26; Ex. 41.

[16] Aetna App., Ex. 19; Ex. 42 & Ex. 48.

[17] Aetna Resp., pp. 22-25 and record references.

[18] Aetna Resp., pp. 5-8 & 21-23 and record references.

4

its affiliates were "related" or that these costs were being paid *to the physicians* and, hence, not costs for facility services under the plans.[19] And while Plaintiff suggests an "advice-of-counsel" defense, which is not conclusively established, that "advice" concerns only marketing agreements beginning in 2013. It certainly does not account for everything else.

### D. Aetna Has Shown Injury; The Court Should Reject Plaintiff's New Grounds

Lastly, Plaintiff essentially asserts a standing argument that Aetna (as opposed to the plans) has not suffered any injury as a result of Victory's fraud. Plaintiff moved for summary judgment on the element of "injury" based on a purported lack of damages, namely, according to Plaintiff, the difference between the value of what Aetna paid and the benefit received—not this new argument in the reply brief of which Aetna had no notice. Nevertheless, Plaintiff sued Aetna as a fiduciary of the plans and cannot now complain about Aetna's standing.

Furthermore, as Aetna has responded, Aetna paid plan benefits that were not otherwise owed to Victory and produced a damage model (Aetna App., Ex. 7-1) based on the amounts Victory collected from Aetna's members (*i.e.*, the "true" billed charges giving Plaintiff the benefit of the doubt) and the percentage of those charges payable under the plans. For those services that were not covered at all, which Aetna has demonstrated, Plaintiff is correct that Aetna is entitled to recover (including on behalf of the plans where appropriate) the entire amount paid to Victory.[20]

---

[19] *See* Aetna's Resp., pp. 22-23 & pp. 31-32 (plan language). Plaintiff submits no evidence that Victory routinely submitted implant invoices. While Victory did submit some invoices to SIU on certain occasions, notably, Aetna questioned why they were "hand-written." Given the fact that Plaintiff has refused to produce anything regarding its implant expenses in this case other than the occasional hand-written invoice, this is hardly evidence of Victory actually paid.

[20] Notably, *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998), involved post-trial proceedings after damages were presented to the jury.

5

| | |
|---|---|
| OF COUNSEL:<br>HUNTON ANDREWS KURTH LLP<br>　　and<br>M. KATHERINE STRAHAN<br>State Bar No. 24013584<br>*kstrahan@huntonak.com*<br>ALLISON A. SJOBERG<br>State Bar No. 24089622<br>*asjoberg@huntonak.com* | Respectfully submitted,<br><br>By:　/s/*John B. Shely*　　　　　　　　<br>　　　JOHN B. SHELY<br>　　　State Bar No. 18215300<br>　　　HUNTON ANDREWS KURTH LLP<br>　　　600 Travis, Suite 4200<br>　　　Houston, Texas 77002<br>　　　Telephone: (713) 220-4105<br>　　　Telecopier: (713) 220-4285<br>　　　*jshely@huntonak.com*<br><br>ATTORNEY-IN-CHARGE FOR DEFENDANTS AETNA HEALTH INC., AETNA HEALTH INSURANCE COMPANY AND AETNA LIFE INSURANCE COMPANY |

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2019, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who are known "Filing Users:"

Jennifer Rudenick Ecklund
*Jennifer.Ecklund@tklaw.com*
Andrew Cookingham
*Andrew.Cookingham@tklaw.com*
Reed C. Randel
*Reed.Randel@tklaw.com*

　　　　　　　　　　　　　　　　　　　/s/*John B. Shely*　　　　　　　　
　　　　　　　　　　　　　　　　　　　John B. Shely

HOU 3964762v1