IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NEIL GILMOUR III, TRUSTEE FOR | § | |
| THE GRANTOR TRUSTS OF VICTORY | § | |
| PARENT COMPANY, LLC;  VICTORY | § | SA-17-CV-00510-FB |
| MEDICAL CENTER CRAIG RANCH, | § | |
| LP,  VICTORY MEDICAL CENTER | § | |
| LANDMARK, LP,  VICTORY MEDICAL | § | |
| CENTER MID-CITIES, LP,  VICTORY | § | |
| MEDICAL CENTER PLANO, LP, | § | |
| VICTORY MEDICAL CENTER | § | |
| SOUTHCROSS, LP,  VICTORY | § | |
| SURGICAL HOSPITAL EAST | § | |
| HOUSTON, LP,  VICTORY MEDICAL | § | |
| CENTER BEAUMONT, LP, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | |
| | § | |
| AETNA HEALTH, INC.,  AETNA | § | |
| HEALTH INSURANCE COMPANY, | § | |
| AETNA LIFE INSURANCE COMPANY, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Aetna's Motion for Summary Judgment [#94]. This report also addresses Aetna's Opposed Motion to Exclude the Opinions of Plaintiff's Damages Expert, Rodney Sowards [#103], and Aetna's Motion for Sanctions and Supporting Brief [#123]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#18]. In reviewing Aetna's motion for summary judgment, the undersigned has also considered Victory's Response to Aetna's Motion

for Summary Judgment [#110] and Aetna's Reply Brief in Support of Their Motion for Summary Judgment [#142].  In reviewing Aetna's *Daubert* motion, the undersigned has also considered Victory's Response [#131] and Aetna's Reply [#136].  In reviewing Aetna's sanctions motion, the undersigned has also considered Non-Party Robert N. Helms, Jr.'s Response [#143], Victory's Response [#143], and Aetna's Replies [#150, #151].  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that Aetna's motion for summary judgment [#94] be **GRANTED**; Aetna's *Daubert* motion [#103] be **GRANTED IN PART**; and Aetna's motion for sanctions [#123] be **DENIED**.  Victory's Motion for Partial Summary Judgment [#100] and Aetna's Motion to Admit Former Trial Testimony of Non-Party Witness Andrew Hillman and/or for an Adverse Inference [#98] will remain pending.

## I.  Procedural Background

Plaintiff Neil Gilmour, III filed this action in his capacity as Trustee for the Grantor Trusts of seven former orthopedic hospitals and their parent company—Victory Parent Company, LLC; Victory Medical Center Beaumont, LP; Victory Medical Center Craig Ranch, LP; Victory Medical Center Landmark, LP; Victory Medical Center Mid-Cities, LP; Victory Medical Center Plano, LP; Victory Medical Center Southcross, LP; and Victory Surgical Hospital East Houston, LP (collectively "Victory")—against Defendants Aetna Health, Inc., Aetna Health Insurance Company, and Aetna Life Insurance Company (collectively "Aetna").  (Compl. [#1] at 1.)  According to Victory's Complaint, Victory's medical centers and hospitals provided medical procedures, including high-cost orthopedic surgeries, to thousands of Aetna's plan members.  (*Id.* at ¶ 1.)

A.      **Victory's Claims Against Aetna and Aetna's Motion to Dismiss**

Victory's Complaint alleges that Aetna failed to pay or underpaid certain out-of-network claims for covered services that Victory provided to Aetna plan members in operating its hospitals and other medical facilities throughout Texas.   (*Id.* at ¶ 1.)   This pattern of underpayment, among other factors, allegedly drove Victory to file for bankruptcy in 2015.  (*Id.* at ¶¶ 5, 54.)  Gilmour was appointed trustee for Victory by the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, pursuant to the First Amended Plan of Reorganization, which was confirmed in March 2016.   *See* Case No. 15-42373.

Gilmour filed this lawsuit on behalf of Victory in June 2017, seeking the amounts Victory alleges it should have been paid by Aetna on the unpaid or underpaid claims, as well as statutory penalties available under ERISA and exemplary damages.   Victory alleges that its patients who were insured by Aetna irrevocably assigned to the Victory facilities the right for Victory to step into the shoes of the patients and both be paid by and seek payment from Aetna for the services Victory rendered, as well as the right to receive all relevant plan documents as a beneficiary of the applicable plans.  (Compl. [#1] at ¶ 58.)  Victory's Complaint describes almost 3,000 allegedly unpaid or underpaid claims.  (Compl. [#1] at ¶ 2.)

The Complaint alleges claims under various provisions of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, the Texas Insurance Code, and Texas common law.  (*Id.* at ¶¶ 64–103.)  There are seven separate counts against Aetna in the Complaint:  (Count 1) failure to comply with applicable plans in violation of ERISA; (Count 2) breach of fiduciary duties under ERISA; (Count 3) failure to provide full and fair review under ERISA; (Count 4) violations of claims procedures under ERISA; (Count 5) violations of the Texas Insurance Code; (Count 6) breach of contract; and (Count 7) promissory estoppel and

negligent misrepresentation.  By its claims, Victory seeks as damages the amounts it should have been paid for those surgeries under either ERISA (for those patients whose plans are governed by ERISA) or under Texas common law for breach of contract (for those patients whose benefit plans are not).  (*Id.*)  For those instances in which Aetna allegedly misrepresented the terms of a patient's plan during the verification process, Victory' Complaint seeks to recover under Texas law the payment level that Aetna promised to pay.  (*Id.* at ¶ 3.)  For those instances in which Aetna allegedly actively misled Victory about the level of benefits available, Victory seeks exemplary damages.  (*Id.* at ¶ 4.)

Aetna moved to dismiss Victory's Complaint, and the undersigned recommended the motion be granted in part and denied in part [#23].  The District Court, however, denied the motion in full [#33].

**B.    Aetna's Counterclaims Against Victory and Victory's Motion to Dismiss**

While the recommendation on Aetna's motion to dismiss was pending, Aetna filed its Answer and Counterclaim [#30].  By its Counterclaim, Aetna alleges that Victory engaged in a fraudulent billing scheme to submit excessive charges for services allegedly provided to Aetna's health plan members.  (Countercl. [#30] at ¶ 3.)  Aetna seeks to recover these allegedly improper payments through claims of fraud, "money had and received," negligent misrepresentation, and unjust enrichment, and also pleads exemplary damages.  (*Id.* at ¶¶ 14–37.)  Alternatively, Aetna, as an ERISA claim-fiduciary with authority to recover overpayments, seeks the equitable return of plan benefits paid to Victory that are not payable under the terms of the ERISA plans at issue. (*Id.* at ¶¶ 38–42.)

Victory moved to dismiss Aetna's counterclaims.  While the motion was pending, Aetna timely filed its Supplemental Counterclaim, reiterating the same claims but adding additional

factual details.   Finding that the motion to dismiss was not mooted by the supplemental counterclaim, the undersigned recommended the motion to dismiss be denied on the merits [#42].  The District Court adopted the report and recommendation [#45].  Accordingly, all claims and counterclaims asserted in the parties' pleadings remain in the case.

## C.      Pending Motions

This Report and Recommendation addresses three of the five motions pending before the Court in this case.  Aetna has moved for complete summary judgment as to all of Victory's claims [#94].  (Victory in turn has moved for summary judgment as to Aetna's counterclaims, but that motion will be addressed in a separate Report and Recommendation).  Aetna has also moved to exclude the opinions of Plaintiff's damages expert, Rodney Sowards, and for sanctions against Victory and Victory's former CEO Robert Helms (a non-party) under Rule 11 of the Federal Rules of Civil Procedure [#123].  Finally, Aetna asks the Court to permit the testimony of non-party Andrew Hillman taken from a recent criminal trial in the Northern District of Texas to be introduced at trial as evidence in support of Aetna's counterclaims in this case.  Alternatively, Aetna asks the Court to order that Aetna is entitled to an adverse inference against Victory based upon Hillman's refusal to testify in this case.  All motions are ripe for this Court's review, but this recommendation addresses the substance only of Aetna's motion for summary judgment, *Daubert* motion, and motion for sanctions.

## II.  Aetna's Opposed Motion to Exclude the Opinions of Plaintiff's Damages Expert, Rodney Sowards [#103]

Aetna has moved to exclude the opinions of Victory's damages expert, Dr. Sowards.  This threshold issue must be addressed before the merits of Aetna's motion for summary judgment  because Victory relies heavily on the expert report and deposition of Sowards in defending against Aetna's dispositive motion.

Victory timely designated Rodney Sowards, a certified public accountant, as an expert to evaluate the damages Victory suffered as a result of Aetna's alleged underpayment of claims [#61]. Sowards's sealed expert report analyzes 1,801 medical claims submitted by Victory to Aetna between 2010 and 2015 that Victory contends were underpaid. (Sowards Expert Report [#103-9].)[1] Sowards is the Vice President of Veritas Advisory Group, Inc. ("Veritas"), the group retained by Victory to analyze data related to its claims. (*Id.* at 21.) Sowards's expert report opines that Aetna underpaid Victory by $25.8 million with respect to the claims at issue in this lawsuit. (*Id.* at 16–17.) After reviewing the report of Aetna's rebuttal expert, Sowards submitted a revised expert report [#103-11], adjusting his previous damages calculation by $1.3 million. (Rebuttal Report [#103-11] at 22.)

Aetna's motion asks the Court to exclude the opinions of Sowards under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). Aetna maintains that Sowards's methodology in his original expert report is unreliable and his rebuttal report should be excluded as untimely.

---

[1] Victory's Complaint alleges the failure to pay 46 claims and the underpayment of 2,943 claims. (Compl. [#1] at ¶ 2.) Sowards did not quantify damages for all of these claims, however, due to insufficient data, abandonment by Victory, and the exclusion of claims that identify the Centers for Medicare and Medicaid Services as the basis for out-of-network reimbursement. (Sowards Expert Report [#103-9] at 5.) Accordingly, only 1,801 claims are at issue in this lawsuit.

The Court need not decide today whether the conclusions in Sowards's expert report are sufficiently reliable such that he would be permitted to testify at trial on damages; nor must it resolve the question of the timeliness of Sowards's rebuttal report.  But to evaluate the merits of Aetna's motion for summary judgment, the Court must first decide whether Victory can rely on Sowards's testimony in the context of that motion for the purpose of raising a fact question as to Aetna's liability.  The undersigned concludes that Victory cannot.

Sowards is Victory's damages expert.  Although Victory's expert designation does not specify the topics to be covered by Sowards's expert report or otherwise define the scope of his expert testimony, there is no basis for concluding that Sowards has expressed an opinion on any matter other than Victory's damages.  Sowards's expert report indicates that he was retained by Victory "to evaluate damages Victory allegedly suffered in connection with medical facility services it provided to members of health plans administered or insured by [Aetna]."  (Sowards Expert Report [#103-9] at 4; *see also id.* at 5 (describing the expert report as "address[ing] Veritas's evaluation of Victory's damages as a result of Aetna's wrongdoing"); *see also id.* at 8 ("Veritas has been asked to determine the amount, if any, of damages incurred by Victory due to Aetna's alleged improper processing of claims in dispute.").)  Nowhere in Sowards's expert report does he set forth an opinion or conclusion on any other topic but the "evaluation and quantification of damages," i.e., the amount by which Aetna underpaid Victory's medical claims. (*See id.* at 17 (concluding that "Aetna has underpaid Victory approximately $25.8 million.").

The question raised by Defendant's summary judgment motion is whether Victory has raised a material fact question as to Aetna's violation of ERISA.  Whether Aetna misinterpreted or misapplied the plan terms (i.e., whether Aetna is liable to Victory) is a distinct question from how to calculate the amount of damages if Victory can prove Aetna did so.  And Sowards

acknowledged in his deposition that Victory itself—and not Sowards independently—decided which claims were properly paid and which claims were underpaid. (Sowards Dep. [#103-2] at 149:21–150:22.) Sowards also admitted that he assumed the truth of Victory's representations for purposes of calculating the amount by which the identified claims were underpaid. (*Id.*) Yet, employing circular reasoning, Victory relies heavily on the opinions of Sowards in its summary judgment response to establish Aetna's *liability*—that Aetna failed to pay Victory's claims in accordance with the terms of Aetna's members' health plans as required by ERISA. (*See* Summ. J. Resp. [#110] at 19–20 (relying on Sowards's analysis to establish that "Aetna failed to pay Victory's claims in accordance with the terms of Aetna's members' health plans as required by ERISA"; *see also id.* at 22 (arguing that Victory "has produced compelling evidence from Aetna's own witnesses and [Victory's] testifying expert, Rodney Sowards[,] that Aetna failed to correctly interpret the health plans at issue"); *see id.* at 24 ("And as established by Sowards, Aetna's failure to pay in accordance with the clear meaning of the plans' terms, resulted in significant underpayment of Victory's claims."); *see also id.* at 27 ("Mr. Sowards' expert analysis establishes that, at a minimum, there is a fact issue as to whether Aetna failed to reimburse Victory's claims under the method that the plans require.").) The Court should not permit Victory to rely on Sowards's opinions for this purpose.

Aetna's *Daubert* motion argues the Court should exclude Sowards's expert testimony as unreliable on the basis that Sowards's methodology for establishing the amount of Aetna's underpayment is flawed. As applied to the question of Aetna's liability, the undersigned agrees with Aetna. Victory, as the proponent of Sowards's testimony, bears the burden of establishing by a preponderance of the evidence that his methodology is reliable. *See Moore*, 151 F.3d at

276.  Insofar as Sowards's testimony is offered to support Victory's assertion that Aetna violated ERISA in processing the 1,801 disputed claims, Victory has failed to satisfy this burden.

Aetna's *Daubert* motion highlights the primary flaw in Sowards's methodology—Sowards's use of a data set of "undisputed claims" subjectively identified by Victory as his benchmark for what constitutes payment of Victory's medical claims in compliance with ERISA. Sowards's method of calculating damages, as described in his original expert report, is a form of benchmarking or statistical sampling.  Victory supplied Sowards with a data set of the 2,900 medical claims Victory submitted to Aetna between 2010 and 2014 that Victory alleges were not underpaid and has chosen not to dispute in this lawsuit.  It is this set of claims that Sowards uses as his data point for calculating damages as to almost all of the 1,801 claims at issue.[2]  Sowards accepted Victory's categorization of these 2,900 claims as properly paid without independent analysis of the claims.  He then determined the percentage relationship between the amount Victory billed Aetna on each of these claims and the amount Aetna ultimately paid, averaged this amount, and then applied that percentage to the disputed R&C claims and disputed FAIR Health claims for which no geographic-specific data was available.  (Sowards Expert Report [#103-9] at 13–14.)  Sowards concluded that Aetna historically paid an average of 64% of the billed amounts on the 2,900 undisputed claims, but only paid 29% of the billed amounts on the 1,801 disputed

_____

[2] According to Sowards, his team at Veritas reviewed each of the welfare benefit plans associated with each of Victory's claims and every plan document Aetna produced in discovery in this case.  (Sowards Expert Report [#103-9] at 4.)  Veritas then categorized each of the 1,801 claims into one of two categories based on the methodology for reimbursement specified in the plan: (1) reimbursement based on published FAIR Health data (data organized by geographic region into a searchable database) or (2) reimbursement based on what constitutes a "reasonable and customary" ("R&C") charge as defined in each respective plan.  (*Id.* at 8–9.)  The expert report also references a third category—the allowable published by the Centers for Medicare and Medicaid Services.  This category was disregarded, however, because, as previously noted, Medicare/Medicaid claims were not included in the provided damages model.  *See supra* at n.1.

claims.  (*Id.* at 15–16.)  Applying the higher payment ratio to the 1,801 disputed claims, Sowards determined that Aetna underpaid Victory by $25.8 million.  (*Id.* at 16–17.)

The primary problem with this approach, especially as applied to the question of Aetna's liability, is that it rests on an assumption that certain claims were properly paid and others were underpaid without undertaking an independent analysis to determine the same.   Aetna has vigorously contested throughout this lawsuit the allegation that it failed to adjudicate Victory's claims in compliance with ERISA and in accordance with governing plan terms.   If the assumption that the 1,801 disputed claims were underpaid is removed from Sowards's analysis, then all that Sowards's testimony stands for is a calculation of the difference between the average reimbursement rate for the disputed and undisputed claims, as categorized by Victory. Insofar as Victory has attempted to designate Sowards as more than a damages expert, his opinions and testimony are not reliable evidence of Aetna's liability under ERISA.  The Court should therefore not permit Victory to rely on Sowards's expert report and deposition in defending against Aetna's motion for summary judgment and should grant Aetna's *Daubert* motion in part.[3]  If the Court awards summary judgment to Aetna, as recommended herein, the Court should dismiss the remainder of Aetna's *Daubert* motion (challenging the admissibility of Sowards's opinions on damages) as moot.

---

[3]   Aetna also makes passing reference in its motion to the general principle, recognized by the Fifth Circuit, that courts must limit their review of the interpretation of a benefits plan under ERISA to the administrative record.  *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013).  Aetna does not develop this argument in its motion, nor is it addressed in Victory's response.  The undersigned simply recognizes here that this is another possible issue with Victory's reliance on Sowards's testimony to defeat Aetna's motion for summary judgment and Victory's failure to provide the Court with a sufficient sampling of plan documents, plan language, and other items that would have been before Aetna during the claims administration process.

### III.  Aetna's Motion for Summary Judgment

Aetna seeks summary judgment on all claims asserted in Victory's Complaint.  Aetna maintains that all of Victory's claims fail as a matter of law due to lack of evidence essential to the claims or based on various affirmative defenses established as a matter of law by Aetna. Victory's response to Aetna's motion only addresses Counts 1 and 6 of its Complaint and Aetna's affirmative defenses, arguing that there is a genuine issue of material fact as to whether Aetna improperly denied and underpaid claims in violation of Section 502(a)(1)(B) of ERISA, as to those claims governed by ERISA, and as to whether Aetna breached plan contracts, as to those claims not governed by ERISA.

Victory's response expressly concedes that Aetna is entitled to summary judgment on Victory's claims for breach of fiduciary duty under ERISA (Count 2), procedural violations of ERISA (Counts 3 and 4), and promissory estoppel and negligent misrepresentation (Count 7). (Resp. [#110] at 45 n.130.)  Victory also indicated in one of its discovery responses earlier in this litigation that it is no longer seeking to recover prompt payment statutory penalties under the Texas Insurance Code (Count 5).  (Third Am. Answers and Objections [#96-1] at 6.)  Finally, Victory also did not respond to Aetna's motion with respect to Victory's claims for statutory penalties under ERISA and exemplary damages.  Accordingly, Aetna is entitled to summary judgment on Counts 2, 3, 4, 5, and 7 of Victory's Complaint, and the only claims before the Court as to Aetna's motion for summary judgment are Victory's claims for additional plan benefits (Counts 1 and 6) and Aetna's affirmative defenses to those claims.

Aetna argues that Victory has no evidence that it is entitled to any additional benefits under any specific plan terms based on Aetna's claim determinations, and the Court should review Aetna's claims determinations under a deferential abuse-of-discretion standard as to those

plans governed by ERISA.  Victory responds that a genuine issue of material fact remains as to whether Aetna correctly interpreted its plans; the Court should review Aetna's claims determinations under a *de novo* standard, not for an abuse of discretion; and even if the Court applies the more deferential standard advocated by Aetna, there is a genuine issue of material fact as to whether Aetna abused its discretion.

The Court need not decide which standard of review applies to Victory's ERISA claims, because under either standard Aetna prevails on its motion for summary judgment.  Victory's primary evidence cited to defeat Aetna's motion is the expert report and deposition testimony of its damages expert, Rodney Sowards, which as is discussed above, should be excluded from the Court's consideration insofar as Victory is attempting to proffer Sowards's testimony on the question of Aetna's liability, as opposed to merely damages.  Having excluded Sowards's report and testimony, the undersigned finds that Aetna is entitled to summary judgment on Victory's ERISA and breach-of-contract claims because Victory has failed to produce sufficient evidence to raise a genuine dispute of material fact on Aetna's alleged liability for denying or underpaying Victory's medical claims at issue.  Given the foregoing, the Court need not consider Aetna's alternative basis for summary judgment—that it has established various affirmative defenses as a matter of law.

## A.    Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**B.     Facts Supported by the Summary Judgment Record**

The summary judgment record before the Court establishes the following undisputed facts underlying this lawsuit and pertaining to the parties' cross-motions for summary judgment.

Victory was formed in 2009 by Robert Helms to own and operate a series of acute care hospitals specializing in elective procedures, such as spine, orthopedic, and bariatric surgeries.  (2011 Victory Healthcare Business Plan [#114-2] at 4; 2014 Victory Healthcare Business Plan [#115-4] at 4; Helms Dep. [#96-37] at 124:25–125:13.)  Helms served as Victory's CEO and Chairman from the company's founding until its bankruptcy in June 2015.  (2014 Victory Healthcare Business Plan [#114-4] at 20.)  Victory operated through an entity named Victory Parent Company, LLC, that had ownership interests in each of Victory's facilities.  (2014 Victory Healthcare Business Plan [#114-4] at 19.)  These partnerships included Victory Medical Center Beaumont L.P., Victory Medical Center Craig Ranch. L.P., Victory Medical Center Landmark, L.P., Victory Medical Center Mid-Cities, L.P., Victory Medical Center Plano, L.P., Victory Medical Center Southcross, L.P., Victory Surgical East Houston, L.P., and Victory Medical Center Houston, L.P.  (2014 Victory Healthcare Business Plan [#115-4] at 11–15.)

Aetna administers claims for benefits available under group health benefit plans, including plans sponsored by employers for the benefit of their eligible employees and their eligible dependents.  (Compl. [#1] at ¶¶ 25, 26; Answer [#30] at ¶¶ 25, 26.)  Most plans administered by Aetna are funded by employee and employer contributions, which are known as "self-funded" plans, for which Aetna provides third-party claims administration services.  (Compl. [#1] at ¶ 26; Answer [#30] at ¶ 26.)  Others are "fully-funded" plans, wherein Aetna both insures and administers the plan.  (Compl. [#1] at ¶ 26; Answer [#30] at ¶ 26.)  Both types of plans provide certain coverage terms and benefits for healthcare expenses incurred by plan participants and beneficiaries.  Both types of plans are at issue in this lawsuit.  (Compl. [#1] at ¶ 26.)

14

Regardless of whether an Aetna health benefit plan is self-funded or fully-funded, the plan allows the insured to choose between "in-network" and "out-of-network" providers, with varying cost differentials.  "In-network" health care providers contract with Aetna to provide services to members in exchange for negotiated rates through the execution of managed care agreements.  (*See, e.g.*, Carilion Plan [#96-10] at 11; Huntsman Plan [#96-12] at 24.)  "Out-of-network" providers have not entered into these agreements, and members are subjected to less predictable charges.  (Helms Dep. [#115-1] at 9, 59:14–18.)

For the majority of the time period relevant to this suit, all of Victory's hospitals were out-of-network with all insurance plans, meaning the hospitals did not have any managed care agreements with Aetna or any other insurance company.  (2011 Victory Healthcare Business Plan [#115-4] at 4; Helms Dep. [#96-19] at 126:3–14; Helms Dep. [#115-1] at 59:14–18; Snodgrass Dep. [#96-38] at 58:22–59:12.)  Victory would therefore submit claims to Aetna for reimbursement under the terms of the policy at issue pursuant to the plan's out-of-network benefits.  (Russell Dep. [#115-1] at 22–23, 77:23–78:2.)

Victory's stated billing practice was to first collect a deposit from its out-of-network patients and then bill the insurance company for reimbursement under the patient's plan.  (Victory Patient Collection Guidelines [#96-43] at 2.)  After the insurance company paid its portion, Victory would adjust the patient's account to determine any remaining balance owed on the patient's deductible and applicable co-insurance, if any.  (Victory Patient Collection Guidelines [#96-43] at 2.)  In 2011, Victory entered into a contract with a third-party debt collector, Financial Corporation of America, to provide billing and collection services for amounts owed to Victory.  (Collection Service Agreement [#97-1] at 161–66.)

Aetna has a Special Investigations Unit ("SIU") devoted to detecting fraud, waste, and abuse in the submission of claims.  (Compl. [#1] at ¶ 39; Answer [#30] at ¶ 39; Kiefer Dep. [#115-1] at 29:1–9.)  In 2013, Aetna's SIU began an investigation into Victory's medical claims after a plan sponsor complained about one of Victory's surgical charges as excessive.  (Aetna's Mtn. [#94] at 12; Victory's Resp. [#110] at 13.)  Part of this investigation was to flag Victory's claims for an additional prepayment review, which removed claims from automatic adjudication and payment and instead funneled them through Aetna's Itemized Bill Review Program, an individualized review process conducted by a third-party vendor, before any payment could be made.  (Kiefer Dep. [#97-2] at 72, 21:22–22:1; Shuler Dep. [#96-36] at 20:15–19; Kiefer Dep. [#96-39] at 23:15–24:3.)  Aetna's SIU investigation of Victory's allegedly excessive billing practices continued for months but was ultimately inconclusive.  (Kiefer Dep. [#97-2] at 87, 91:14–92:5.)

In 2014, Aetna entered into managed care contracts with each of the Victory facilities.  (Russell Dep. [#96-34] at 77:11–13.)  Once these agreements were reached, Victory's claims were no longer subjected to the additional review process, as it was no longer necessary to evaluate the reasonable and customary rate for the medical services billed.  (Kiefer Dep. [#97-2] at 91:14–92:5.)  Under the managed care agreements, Victory's facilities were in-network and claims were paid in accordance with the contract between Aetna and the individual facility.  (Kiefer Dep. [#97-2] at 91:25–92:1–5.)  In June 2015, Victory filed for bankruptcy protection, and this lawsuit ensued.  (Bankruptcy Docket Sheet [#96-47] at 2.)

**C.**    **Under either an abuse of discretion or *de novo* standard, Aetna is entitled to summary judgment on Victory's ERISA claims (Count 1).**

Victory contends the Court should review Aetna's ERISA determinations *de novo*, whereas Aetna maintains they should be reviewed under an abuse of distraction standard.

Regardless of which standard applies, Aetna is entitled to summary judgment on Victory's ERISA claims.

### i.   <u>Standard of Review</u>

Under ERISA, a beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Where an ERISA plan grants discretionary authority to the administrator with respect to the benefits determination, as here,[4] courts review the denial of ERISA benefits for an abuse of discretion.  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009).  When a plan does not include such a delegation clause, a denial of benefits challenged under Section 1132(a)(1)(B) is reviewed under a *de novo* standard.  *Glenn*, 554 U.S. at 111 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

In the ERISA context, the "abuse of discretion" standard is synonymous with an "arbitrary and capricious" standard of review.  *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999).  A decision is arbitrary and capricious if it is "made without a rational connection between the known facts and the decision or between the found facts and the evidence."  *Id.* at 215 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828–29 (5th Cir. 1996)).  It is not this Court's role to second guess the administrative determination; the Court need only "assure that the administrator's decision fall[s]

---

[4]   Again, Victory's Complaint references the failure to pay 46 claims and the underpayment of 2,943 claims.  (Compl. [#1] at ¶ 2.)  Yet, the report of Victory's designated expert, Rodney Sowards, analyzed only 1,801 claims due to issues with data and Victory's abandonment of certain claims.  (Sowards Expert Report [#96-32] at 5 n.8.)  Aetna provides the Court with a sampling of ERISA health benefit plans implicated by the 1,801 claims at issue, which grant Aetna discretionary authority to determine claims for benefits and to construe plan terms.  (*See, e.g.*, Knox Aff. [#97-7] at ¶ 2; CVS Plan [#96-8] at 54–55; Lockheed Martin Plan [#96-16] at 92–93.)

somewhere on a continuum of reasonableness—even if on the low end." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999), *overruled on other grounds by Glenn*, 554 U.S. 105.

Usually, the application of the abuse of discretion standard is a two-step process, wherein a court first determines the legally correct interpretation of the Plan, and second, if the administrator did not apply the legally correct interpretation, determines whether the administrator's actions constituted an abuse of discretion. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992). However, in cases not involving sophisticated Plan interpretation issues, "the reviewing court is not rigidly confined to this two-step analysis." *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994).

Victory does not dispute that the plans cited by Aetna contain clauses delegating discretionary authority to Aetna. Yet Victory contends that this Court should apply a *de novo* standard of review because Texas prohibits discretionary clauses of the type contained in the plans by statute. *See* Tex. Ins. Code § 1701.062(a). Section 1701.062, which was enacted by the Texas Legislature in 2011, bans discretionary clauses in certain insurance policies. *Id.*; *see also Woods v. Riverbend Country Club, Inc.*, 320 F. Supp. 3d 901, 908 (S.D. Tex. 2018) (discussing enactment of Section 1701.062). A "discretionary clause" is defined by the statute as a clause that "purports or acts to bind the claimant to, or grant deference in subsequent proceedings to, adverse eligibility or claim decisions or policy interpretations by the insurer . . . ." Tex. Ins. Code § 1701.062(b)(1). Victory maintains this statute governs the plan at issue here and therefore the discretionary clause contained therein is unenforceable and *Firestone*'s default *de novo* review standard is applicable.

But Victory does not provide any argument as to why Section 1701.062 would apply to the ERISA plan at issue in this case; Victory merely makes a passing reference to Section 1701.062 in its response to Aetna's motion.  As Aetna points out, the plans cited in its motion for summary judgment are self-funded welfare-benefit plans issued and funded by employers, not a policy of insurance issued by an insurer governed by the Texas Department of Insurance.[5] Section 1701.062 by its own terms prohibits "[a]n insurer" from using certain documents if the document contains a discretionary clause.  Tex. Ins. Code § 1701.062(a).  The chapter in which Section 1701.062 is contained only applies to insurers, such as life, accident, health, casualty, or mutual life insurance companies, not employers funding welfare benefit plans.  *Id.* at § 1701.003(a).  The Texas Supreme Court has stated that the Texas Insurance Code does not regulate self-funded health-benefit plans as insurers.  *Tex. Dep't of Ins. v. Am. Nat. Ins. Co.*, 410 S.W.3d 843, 854 (Tex. 2012) ("Although an employee health-benefit plan may in some respects act like an insurer with respect to the plan's participants, the Insurance Code does not regulate it as one . . . .").

Moreover, even if Section 1701.062 could apply to render discretionary clauses in self-funded plans unenforceable, ERISA likely preempts this Texas law in the context of a self-funded plan.  The Fifth Circuit has noted this possibility but has not yet decided the issue.  *See Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 250 (5th Cir. 2018) (noting the growing trend in state laws banning insurers' use of delegation clauses, and Section 1701.062(a) specifically, and raising the possibility of preemption).  *See also Tex. Dep't of Ins.*, 410 S.W.3d at 854 ("ERISA generally precludes the Code from deeming these plans to be insurers or in the business of insurance.").

---

[5]  Aetna has demonstrated that self-funded plans form the basis of all the exemplar plans quoted in the report of Soward, Victory's expert.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  ERISA's preemption statute includes a savings clause, sparing from ERISA preemption "any law of any State which regulates insurance, banking, or securities."  *Id.* at § 1144(b)(2)(A).  But ERISA's preemption statute also contains a "deemer clause," which revives preemption for certain laws that the saving clause might otherwise exempt from preemption.  *See id.* at § 1144(b)(2)(B).  "Under the deemer clause, an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws 'purporting to regulate' insurance companies or insurance contracts."  *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990).  Accordingly, because the Plan at issue in this suit is self-funded, the deemer clause likely exempts it from state laws that "regulate insurance" within the meaning of the savings clause.  *See id.* at 61.  Section 1701.062 is therefore most likely preempted by ERISA with respect to the Plan, and an abuse of discretion, not a *de novo*, standard should be applied in this Court's review of Aetna's claims determinations.

However, the Court need not ultimately decide which standard of review applies to Aetna's claims determinations, as Aetna prevails under either an abuse of discretion or *de novo* standard, both of which ask whether Aetna correctly interpreted the ERISA plans at issue. Victory has failed to provide the Court with sufficient summary judgment evidence to raise a genuine issue of material fact on this question.

### ii.   **Aetna is entitled to summary judgment on Victory's remaining ERISA claim.**

To defeat Aetna's motion for summary judgment, Victory must demonstrate that there is a genuine dispute of material fact on its claim that Aetna failed to comply with ERISA in violation of Section 502(a) of ERISA by denying Victory benefits due under plan terms.  *See* 29 U.S.C. § 1132(a)(1).  Aetna maintains that the summary judgment record shows that there is no

evidence that Aetna abused its discretion under the plans or that any additional benefits were due under a *de novo* review of the plans.  Excluding Sowards's opinions from the summary judgment record, the undersigned agrees with Aetna.

The question is essentially whether there is evidence from which a factfinder could conclude that Aetna failed to correctly interpret the ERISA plans at issue.  Whether applying either an abuse of discretion or *de novo* standard, the Court is first required to determine the legally correct interpretation of the relevant medical plans.  *See Wildbur,* 974 F.2d at 637–38.  To answer this question, the Court considers (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan.  *Id.*  When interpreting an ERISA plan, the provisions are interpreted according to their plain meaning and are read "not in isolation, but as a whole."  *Dialysis Newco Inc. v. Cmm'ty Health Sys. Group Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019) (internal quotation and citation omitted).  The fiduciary's "interpretation is consistent with a fair reading of the plan if it construes the plan according to the plain meaning of the plan language."  *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013) (internal quotation marks omitted).  ERISA focuses on the language of the plan, i.e., the contract terms themselves.  *See US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–101 (2013).

Victory maintains that the evidence as to all three of these factors cuts in its favor.  However, in arguing that Aetna has failed to give the plans a uniform construction and has failed to interpret the plans based on their plain meaning, Victory only cites to the testimony of two witnesses—Billie Coleman Shuler and Jay Tidwell, corporate representatives for Aetna.  (Resp. [#110] at 19, 24.)  The complete depositions of these witnesses are not in the record, so the

undersigned cannot review the testimony of Shuler and Tidwell in its full context.  But the pages cited by Victory suggest that Victory is significantly overstating these witnesses' testimony.  For example, Victory states that Shuler "testified that Aetna applied its own methodology regardless of the payment methodology that the health plans at issue require."  (Resp. [#110] at 24.)  But Shuler's testimony was simply that Aetna routes various plans through different internal programs as part of its management of the claims adjudication process, depending on whether the plans have opted into these programs.  (Shuler Dep. [#115-1 at 287–92] at 17:9–22:16.)  Shuler provides some examples of these programs, such as "Itemized Bill Review" (which involves a prepayment review of an itemized bill) or "Facility Review Charge Review" (which applies a specified reasonable charge for a facility claim).  (Shuler Dep. [#115-1 at 287–92] at 17:9–22:16.)

As to Tidwell, Victory characterizes his testimony as establishing that "Aetna does not even evaluate the patient's plan to determine how to pay a particular out-of-network claim."  (Resp. [#110] at 24.)   Yet Tidwell's testimony at the pages cited by Victory merely acknowledges the existence of Aetna's Facility Charge Review program and other internal programs for claims adjudication, testifies to the fact that employers can opt into these plans during contract negotiations, and that he is unsure as to how these employer decisions were communicated to insureds through their benefit booklet. (Tidwell Dep. [#115-1 at 278] at 45:1–46:18.)  Although the testimony of Shuler and Tidwell shows that Aetna's benefits determination process is complicated (and suggests that Aetna has internal extracontractual policies that affect that process), it does not generate a material issue of fact over whether Aetna failed to give any of the plans governing the 1,801 disputed claims in this case a uniform construction or failed to interpret the plans based on their plain meaning.  Victory does not tether the proffered deposition

testimony to any specific plan or plan language, making it exceedingly difficult for the Court to evaluate whether Aetna correctly interpreted the plans at issue in this case.

All that is before the Court are general allegations by Victory that Aetna inappropriately applied internal policies and ignored plan terms and general testimony by Aetna's corporate representatives confirming that internal policies exist and figure into the claims adjudication process. This testimony is insufficient to create a genuine dispute of material fact on the question of whether Aetna applied an incorrect legal interpretation to the plans at issue. Despite the voluminous briefing in this case, Victory has failed to provide evidence of even one specific instance where Aetna processed two claims governed by the same plan but applied different interpretations to the same plan language.

Moreover, the record demonstrates that in at least some instances Aetna's internal policies, such as Facility Charge Review, are explicitly incorporated into a plan's terms. Aetna has submitted several plan samples to the Court as part of the summary judgment record and points to one such plan incorporating the Facility Charge Review in its plan language. (CVS Caremark Policy [#96-8] at 67–68 ("For facility charges: Aetna uses the charge Aetna determines to be the usual charge level for the service in the geographic area where the service is furnished.").) This plan also defines "reasonable charge" as taking into consideration various factors and policies and explains Aetna's reliance on commercial software in administering some of these policies. (*Id.*) Without any specific examples from Victory of an incorrect interpretation of plan language, the Court is unable to find a fact issue that would preclude awarding Aetna summary judgment on Victory's ERISA claim under either an abuse of discretion or *de novo* standard.

**D.**     **Aetna is entitled to summary judgment on Victory's breach-of-contract claim (Count Six).**

The same can be said for Victory's breach of contract claim asserted in Count Six. This claim is based on factual allegations identical to those underlying Victory's ERISA claim, but concerns those plans not governed by ERISA. To survive Aetna' motion for summary judgment on its claim of breach of contract, Victory must provide sufficient evidence to raise a genuine dispute of material fact as to the following elements: (1) a valid contract between the parties; (2) Victory performed or tendered performance; (3) Aetna breached the contract; and (4) Victory was damaged as a result of that breach. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (stating elements of a breach of contract claim under Texas law). Victory has not provided the Court with any plan language for those plans not governed by ERISA, through a representative sampling or otherwise. Without the identification of the plans at issue as to this claim, no reasonable factfinder could find the existence of a contract, let alone evidence that the contract was breached. Moreover, Victory has not advanced any additional or different arguments than those raised with respect to its ERISA claim that could be a sufficient basis for finding breach. Accordingly, the same lack of evidence addressed with respect to Victory's ERISA claim is fatal to Victory's breach-of-contract claim as well, and Aetna is also entitled to summary judgment as to this claim.

**E.**     **The Court need not consider Aetna's affirmative defenses.**

Aetna also seeks summary judgment on its various affirmative defenses, such as whether Victory's alleged failure to collect member coinsurance and deductible responsibilities prevents it from seeking to recover the claims at issue in this suit. Aetna also re-urges its anti-assignment argument that was raised in its motion to dismiss, arguing that Victory lacks standing to recover unpaid benefits on behalf of the individual insureds as to 334 of the 1,801 claims at issue in this

lawsuit because the policies underlying these claims contain anti-assignment provisions.  Aetna also asserts defenses related to the exhaustion of administrative remedies and whether Aetna still provides claims administration services with respect to 149 of the 1,801 plans at issue.

When summary judgment is sought on an affirmative defense, as here, the movant must establish "beyond peradventure" all of the essential elements of the defense to warrant judgment in its favor.  *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  The burden on a party seeking to prove its affirmative defense on summary judgment has been described as a "heavy" one.  *See, e.g.*, *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co. ("Continental I")*, No. CIV A 304CV1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007).

The Court need not consider the parties' arguments and evidence with respect to these defenses under this stringent standard, however, in light of the undersigned's recommendation that Aetna's motion for summary judgment on Victory's remaining two claims in this lawsuit be granted.  If the District Court rejects the undersigned's recommendation, Aetna may again raise these defenses to its liability on some or all of the claims at issue.

### IV.  Victory's Partial Motion for Summary Judgment

Victory's partial motion for summary judgment [#100] seeks summary judgment on Aetna's counterclaims of fraud, negligent misrepresentation, money had and received, unjust enrichment, and quantum meruit.  This Court has jurisdiction over these purely state-law claims pursuant to 28 U.S.C. § 1367(c), which provides for supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (Counterclaim [#30] at 29.)  This Court has original federal question jurisdiction over Victory's

Complaint pursuant 28 U.S.C. § 1331 due its inclusion of ERISA claims, which arise under federal law.   (Complaint [#1] at ¶ 21.)   But if the District Court accepts the undersigned's recommendation to grant Aetna's motion for summary judgment on Victory's remaining claims, there will be no federal question remaining before the Court.   Diversity jurisdiction under 28 U.S.C. § 1332 does not exist in this case because one of the Aetna Defendants is a Texas corporation, .   (Answer [#30] at ¶ 16.)

If the Court grants Aetna summary judgment on the only pending federal claims in this lawsuit, the District Court would have discretion to follow the "general rule" in this Circuit and decline to exercise supplemental jurisdiction over Aetna's counterclaims.   *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").   If the District Court decides to dismiss the pendent claims, such dismissal should be without prejudice so that Aetna can file its claims in state court.   *Bass*, 180 F.3d at 246.   In determining whether a district court abused its discretion in dismissing remaining state-law claims, the Fifth Circuit considers both the statutory provisions of Section 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350–51 (1988) and *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).   *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (holding district court abused its discretion by declining to exercise supplemental jurisdiction over pendent state law claims where trial was scheduled to occur in only one month and case had been pending for three years).

In light of the possibility that the District Court may dismiss Aetna's pendent counterclaims, the undersigned refrains from issuing a recommendation on the merits of Victory's motion at this time.  If the District Court either rejects this report and recommendation as to Aetna's motion for summary judgment or accepts the report and chooses nonetheless to maintain jurisdiction over Aetna's counterclaims, the undersigned will issue a recommendation on Victory's motion.

## V.  Aetna's Motion Regarding Hillman's Trial Testimony

Aetna's motion regarding the testimony of non-party Andrew Hillman asks the Court to declare the testimony admissible at trial as to Aetna's counterclaims.  Alternatively, Aetna asks the Court to permit an instruction that Aetna is entitled to an adverse inference based on Hillman's refusal to testify in this case by invoking his Fifth Amendment privilege against self-incrimination.  As this motion concerns evidence that would be offered at trial on Aetna's counterclaims, and it is possible that the District Court may decline to exercise supplemental jurisdiction over these claims, the undersigned will refrain from ruling on this motion at this time.  The undersigned will issue a ruling on this motion if the District Court retains jurisdiction over Aetna's counterclaims and rules that they should proceed to trial.

## VI.  Aetna's Motion for Sanctions

By this motion, Aetna moves for sanctions against Victory and its former CEO, Robert Helms, under Rule 11 of the Federal Rules of Civil Procedure and this Court's inherent power to sanction.  Aetna alleges Helms, although a non-party, is closely tied to this litigation as Victory's largest creditor.  The requested sanction is dismissal of all of Victory's claims against Aetna and ordering the payment of Aetna's fees and costs in this case by both Plaintiff and Helms.  The District Court should dismiss this motion.

27

If the District Court accepts the undersigned's recommendation and grants Aetna's motion for summary judgment, half of the relief sought by Aetna in its sanctions motion— dismissal of Victory's claims—will already be obtained, mooting the portion of the sanctions motion seeking that relief and making Aetna the prevailing party on Victory's ERISA claims. ERISA contains a fee provision, which allows a court to award attorney's fees and costs "in its discretion . . . to either party" in any civil action to recover ERISA benefits. 29 U.S.C. § 1132(g)(1). *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). Aetna may therefore seek its fees and costs from Victory through the standard process for doing so after judgment is issued in this case.

Rule 11 gives the Court discretion to impose sanctions when a pleading or motion is lacking in evidentiary support, is not warranted by existing law, or is filed for an improper purpose. Fed. R. Civ. P. 11(c)(1). Rule 11 sanctions against a party are a rare and extraordinary remedy that should only be invoked where an action is clearly frivolous and constitutes an abuse of the judicial process. *Laughlin v. Perot*, No. CA 3-95-CV-2577-R, 1997 WL 135676, at *8 (N.D. Tex. Mar. 12, 1997). A Rule 11 motion is not a proper substitute for a motion for summary judgment and should not be invoked for the mere failure of a claim. *Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997). Aetna's sanctions motion simply reiterates the arguments advanced in its summary judgment motion, many of which the undersigned has already found to have merit. The Court should decline to order fees and costs at this stage of the litigation against Victory, where other less extraordinary means are available for obtaining the same relief. The Court should also decline to issue Rule 11 sanctions against Helms. Neither Helms nor his attorney have signed the pleadings in this case. And the possibility of Helms benefitting from

any recovery in this lawsuit does not warrant the extreme step of imposing sanctions under Rule 11.

As to the Court's inherent power to sanction bad faith conduct, it is unclear whether this power even extends to the conduct of non-parties like Helms. *See Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 n.39 (5th Cir. 1993).  Aetna relies on a holding in a single district court case from the Eastern District of Texas in asking for sanctions against Helms as a non-party. *See Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 852 (E.D. Tex. 2017).  This case is not binding on this Court.  Moreover, a party seeking sanctions under the Court's inherent power must provide the Court with clear and convincing evidence of bad faith. *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001).  The fact that Helms asked to be permitted to attend the depositions of all third-party witnesses with his attorney does not suffice.  The Court should deny Aetna's motion for sanctions.

## VII.  Conclusion and Recommendation

Having considered the parties' motions, the responses and replies thereto, the summary judgment record before the Court, and the governing law, the undersigned recommends the following:

- Aetna's Motion for Summary Judgment [#94] be **GRANTED** on the basis that Victory failed to produce sufficient evidence to raise a genuine dispute of material fact on its remaining claims (Counts 1 and 6).

- Aetna's Opposed Motion to Exclude the Opinions of Plaintiff's Damages Expert, Rodney Sowards [#103] be **GRANTED IN PART** in that Sowards's testimony is unreliable on the question of Aetna's liability on Victory's remaining claims. Aetna's challenge to Sowards's testimony as to damages should be **DISMISSED AS MOOT** if the Court accepts the undersigned's recommendation to award Aetna summary judgment.

- Aetna's Motion for Sanctions [#123] be **DENIED**.

Victory's Motion for Partial Summary Judgment [#100] and Aetna's Motion to Admit Former Trial Testimony of Non-Party Witness Andrew Hillman and/or for an Adverse Inference [#98] will remain pending.

### VIII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc).

SIGNED this 12th day of June, 2020.


ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE